UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CHINA SOUTHERN AIRLINES CO., LTD.,

      Plaintiff,

v.

THE PORT AUTHORITY OF NEW YORK
AND NEW JERSEY, SWISSPORT USA, INC.,
DELTA AIR LINES, INC., JFK INTERNATIONAL
AIR TERMINAL LLC, and KUWAIT AIRWAYS
CORPORATION,

      Defendants.

**SECOND AMENDED
COMPLAINT**

1:18-cv-07454 (RJD) (VMS)

Plaintiff CHINA SOUTHERN AIRLINES CO., LTD. ("CSA"), complaining of the defendants THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, SWISSPORT USA, INC., DELTA AIR LINES, INC., JFK INTERNATIONAL AIR TERMINAL LLC, and KUWAIT AIRWAYS CORPORATION (collectively, "Defendants"), alleges in this Second Amended Complaint as follows:

## NATURE OF THE ACTION

1.    This is an action to recover money damages in connection with a) an indemnity claim for alleged property damage to a Kuwait Airways 777-300ER aircraft 9K-AOC ("the Kuwait Aircraft") and b) property and related damage to Plaintiff CSA's 777-300ER aircraft bearing registration number B-7185 ("the CSA Aircraft"), all of which arose from an accident at John F. Kennedy International Airport in Queens, New York ("JFK Airport") on January 5, 2018 ("the Accident"), as well as to recover lost profits, fees, costs and expenses in connection with the Accident and property damage.

## JURISDICTION AND VENUE

2.      Plaintiff is a foreign corporation with its principal place of business in China.

3.      Plaintiff is authorized to do business in the United States and the State of New York.

4.      Defendant The Port Authority of New York and New Jersey ("Defendant Port Authority") is a bi-state transportation agency that manages *inter alia* certain airports in the New York metropolitan area, including JFK Airport.

5.      At all relevant times, Defendant Port Authority was and has been continuously doing business in the States of New York and New Jersey.

6.      Defendant Swissport USA, Inc. ("Defendant Swissport") is a Delaware corporation that provides *inter alia* cargo services, ramp handling, gate services and aircraft maintenance at airports worldwide, including JFK airport.

7.      At all relevant times, Defendant Swissport was and has been continuously doing business in the State of New York.

8.      Defendant Delta Air Lines, Inc. ("Defendant Delta") is a Delaware corporation that operates and provides *inter alia* flights and ground control services at airports worldwide, including JFK airport.

9.      At all relevant times, Defendant Delta was and has been continuously doing business in the State of New York.

10.     Defendant JFK International Air Terminal LLC ("Defendant JFKIAT") is a New York limited liability company that operates Terminal 4 at JFK airport.

11.     At all relevant times, Defendant JFKIAT was and has been continuously doing business in the State of New York.

12.     At all relevant times, Kuwait Airways Corporation ("Defendant Kuwait") was and has been

an agency and/or instrumentality of the foreign state of Kuwait, as defined by 28 U.S.C. §1603(b).

13.     At all relevant times, Defendant Kuwait was and has been owned 100 percent by the government of the nation state of Kuwait.

14.     By virtue of being an agency or instrumentality of a foreign state, Defendant Kuwait was and has been at all relevant times a foreign state, as defined by 28 U.S.C. §1603(a).

15.     At all relevant times, Defendant Kuwait was and has been continuously doing business in the State of New York.

16.     At all relevant times, Defendant Kuwait was and has been an airline that operates flights at airports worldwide, including JFK airport.

17.     At all relevant times, Defendant Kuwait was and has carried on commercial activity in the United States as defined by 28 U.S.C. §1603(d) in the form of a regular course of commercial conduct by operating flights into and out of airports in the United States, including JFK Airport.

18.     The parking of the Kuwait Aircraft at Hardstand 63 and its partial obstruction of Taxiway BB was part of the commercial activity carried on by Defendant Kuwait in the United States.

19.     Defendant Kuwait prior to and as of the time of the Accident carried on commercial activity other than in the United States, including but not limited to the direction, control and operation of the Kuwait Aircraft.

20.     The parking of the Kuwait Aircraft at Hardstand 63 and its partial obstruction of Taxiway BB was performed in connection with the commercial activities of Kuwait outside the United States.

21.  The cockpit crew and other personnel of Defendant Kuwait aboard the Kuwait Aircraft, and all other personnel of Kuwait who caused or contributed to the Kuwait Aircraft parking at Hardstand 63 and partially obstructing Taxiway BB, acted within the scope of their office and employment at all relevant times.

22.  This action is based upon a commercial activity carried on by defendant Kuwait in the United States, namely the regular course of operating flights into and out of airports in the United States, including JFK Airport, and the Kuwait Aircraft parking at Hardstand 63 and partially obstructing Taxiway BB.

23.  This action is based upon an act performed in the United States by Defendant Kuwait, namely the Kuwait Aircraft landing at JFK Airport and parking at Hardstand 63 and partially obstructing Taxiway BB, in connection with a commercial activity carried on by defendant Kuwait outside the United States, namely the direction and control of operation of the Kuwait Aircraft by agents of defendant Kuwait in locations outside the United States.

24.  This action is for money damages sought against Defendant Kuwait for damage to and loss of property occurring in the United States caused by the tortious acts and omissions of defendant Kuwait and its officials and employees, all of whom did so while acting within the scope and office of their employment.

25.  This Court has jurisdiction over Defendant Kuwait pursuant to 28 U.S.C. 1330 based on it being a foreign state as defined by 28 U.S.C. 1603(a) and not being entitled to immunity under 28 U.S.C. 1605-1607 or under any applicable international agreements.

26.  This Court has jurisdiction over all parties other than Kuwait pursuant to 28 U.S.C. § 1332 as the citizenship of the parties is diverse and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

27.    This Court has *in personam* jurisdiction over all Defendants pursuant to New York Civil Practice Law and Rules sections 301 and 302. Defendants conduct business in the State of New York in connection with the provision of services for common carriers, airport operations, and airport safety.

28.    This Court has *in personam* jurisdiction over Defendant Kuwait also by virtue of service of process pursuant to 28 U.S.C. 1330(b) and 28 U.S.C. 1608.

29.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), and 65 McKinney's Cons. Laws of NY § 7106.

### FACTS COMMON TO ALL CLAIMS

30.    On January 5, 2018, the CSA Aircraft was legally authorized to be present within JFK Airport.

31.    On January 5, 2018 the CSA Aircraft was being towed by defendant Swissport.

32.    On January 5, 2018, defendant Kuwait's Aircraft was located at an area of JFK Airport designated by a particular number and remote from Terminal 4, namely a "hardstand" bearing number 63.

33.    On January 5, 2018, Defendant Swissport was hired by Kuwait Airways and/or other entities to move the Kuwait Aircraft into and out of Hardstand 63 in a manner that would not cause damage to the Kuwait Aircraft and would not cause damage to other aircraft.

34.    As of the time of the Accident and prior thereto, the Kuwait Aircraft was parked at Hardstand 63 in such a manner as the nosewheel was not at the stop mark designated on the ground for B777-300 aircraft.

35.    As of the time of the Accident and prior thereto, agents of defendant The Port Authority, including but not limited to defendant JFKIAT and defendant Delta ("the

Agents"), were under its employ, direction, control, supervision and contractual obligation with regard to the instructions communicated to aircraft concerning movement at JFK Airport, including the CSA Aircraft and Kuwait Aircraft.

36.     As of the time of the Accident and prior thereto, the Agents instructed that the Kuwait Aircraft park at Hardstand 63.

37.     As of the time of the Accident, the Kuwait Aircraft was partially obstructing Taxiway BB.

38.     As of the time of the Accident, defendant the Port Authority and/or defendant JFKIAT controlled the design, maintenance, and designation of hardstands at JFK Airport.

39.     As of the time of the Accident, Defendants knew or should have known that a B777-300 located in Hardstand 63 with its nosewheel at the designated stop mark cannot obtain complete access to all cargo doors due to the placement of a light pole in the ground.

40.     As of the time of the Accident, Defendants did or should have communicated to the Agents that a B777-300 located in Hardstand 63 with its nosewheel at the designated stop mark cannot obtain complete access to all cargo doors due to the placement of a light pole in the ground.

41.     No Defendant communicated to CSA or to the persons performing the towing of the CSA Aircraft, via NOTAM or other means, that the Kuwait Aircraft was partially obstructing Taxiway BB.

42.     As of the time of the Accident, a B777-300 located at Hardstand 63 with its nosewheel at the designated stopmark precluded access to one of the forward cargo/other doors due to the placement of a light pole in the ground.

43.     As of the time of the Accident and prior thereto, Defendants knew or should have known that, as a result of the manner in which the Kuwait Aircraft was parked at Hardstand 63,

the Kuwait Aircraft was obstructing part of Taxiway BB.

44.    Prior to the Accident, Defendants knew or should have known that the Kuwait Aircraft required more lighting, linepersons with illuminated wands and/or other means of making the Kuwait Aircraft visible to persons operating the Aircraft on Taxiway BB than would otherwise be necessary had the Kuwait Aircraft not been obstructing Taxiway BB.

45.     Prior to the Accident, the Agents instructed that defendant Swissport tow the CSA Aircraft through Taxiway BB in order to park at Hardstand 73.

46.    Prior to instructing defendant Swissport to move the CSA Aircraft through Taxiway BB, one or more of the Agents closed or attempted to close Taxiway BB to aircraft in excess of Category III and limited Taxiway BB to only A320 and B737 aircraft.

47.    Prior to directing that defendant Swissport bring the CSA Aircraft onto Taxiway BB, the Agents knew or should have known that aircraft in excess of Category III should not traverse Taxiway BB due to the Kuwait Aircraft obstruction.

48.    While defendant Swissport was towing the CSA Aircraft on Taxiway BB, and given the manner in which the Kuwait Aircraft was obstructing Taxiway BB, Defendants knew or should have known that the CSA Aircraft would come into contact with the Kuwait Aircraft.

49.    While the Kuwait Aircraft was parked at Hardstand 63, Defendants knew or should have known that, as a result of the manner in which the Kuwait Aircraft was obstructing Taxiway BB, the likelihood of another aircraft coming into contact with the Kuwait Aircraft was greatly increased.

50.    While the CSA Aircraft was being towed by Swissport on Taxiway BB, the CSA Aircraft came into contact with the Kuwait Aircraft.

51.     The contact between the CSA Aircraft and the Kuwait Aircraft caused damage to the CSA Aircraft.

52.     Kuwait Airways has alleged in a letter of claim to CSA that the contact between the Kuwait Aircraft and CSA Aircraft caused damage to the Kuwait Aircraft in an amount in excess of $12,000,000.00 (twelve million United States dollars) and that Kuwait intends to seek recovery of the alleged damages from Plaintiff CSA.

53.     CSA filed a Notice of Claim with Defendant Port Authority on October 23, 2018, thereby satisfying the statutory requirement for service of notice before initiation of a lawsuit against Defendant Port Authority.

### FIRST CAUSE OF ACTION  - BREACH OF CONTRACT
### (as against defendant the Port Authority)

54.     CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs number "l" through "53" with the same force and effect as if more fully set forth herein.

55.     At all times relevant, written agreements have been and continue to be in full force and effect as between Plaintiff CSA and Defendant Port Authority and/or the Agents with regard to, among other things, the use, occupancy, right of passage, operation and related fees in connection with certain taxiways, hardstands and other areas at JFK Airport.

56.     Pursuant to those agreements, CSA, has the right of ingress and egress by means of existing taxiways.

57.     By virtue of these agreements, Defendant Port Authority and/or the Agents were obligated to ensure, among other things, safe passage, ingress and egress through Taxiway BB and to Hardstand 73.

58.     Defendant Port Authority acting by and through the Agents failed to secure the safe

passage, ingress and egress through Taxiway BB and to Hardstand 73 as it was obligated to do by these agreements.

59. Defendant Port Authority's failure to hire, supervise, direct and control competent agents with regard to the traversing of Taxiway BB, where CSA was directed by the Agents to taxi the CSA Aircraft, was the cause of the Accident and damages sustained by Plaintiff.

60. Defendant Port Authority's failure to hire, supervise, direct and control competent agents with regard to the traversing of Taxiway BB and failure to secure the safe passage, ingress and egress of the CSA Aircraft was a material breach of those agreements between CSA and Defendant Port Authority and/or the Agents, which agreements entitled CSA to the use, occupancy, right of passage, and operation upon the taxiways, including Taxiway BB.

61. The breaches of the agreements by Defendant Port Authority and/or the Agents was the cause in fact and legal cause of the Accident and damages sustained by Plaintiff.

62. CSA performed all conditions precedent, covenants, and promises in accordance with the terms and conditions of the parties' agreements.

63. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to CSA's alleged liability to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

## SECOND CAUSE OF ACTION- NEGLIGENCE
### (as against defendant the Port Authority)

64. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "63" with the same force and effect as if more fully set forth at length herein.

65.     Defendant Port Authority directed, authorized, permitted and/or did not prevent the Agents from instructing the CSA Aircraft to traverse Taxiway BB at a time when Defendant Port Authority and/or the Agents knew or should have known that Taxiway BB was obstructed by the Kuwait Aircraft and/or closed to aircraft greater than Category III and/or open only to A320 and B737 aircraft.

66.     Defendant Port Authority failed to advise and/or notify Plaintiff CSA and/or its agents that Taxiway BB was obstructed by the Kuwait Aircraft, open for only aircraft Category III or less and/or open only to A320 and B737 aircraft.

67.     Defendant Port Authority's act and omissions of directing, authorizing, permitting and not preventing the Agents from instructing the CSA Aircraft to traverse Taxiway BB at a time when Defendant Port Authority and/or the Agents knew or should have known that Taxiway BB was obstructed by the Kuwait Aircraft and/or closed to aircraft greater than Category III and/or open only to A320 and B737 aircraft caused the Accident and the damages to Plaintiff CSA claimed herein.

68.     Accordingly, Defendant Port Authority negligently performed its duties in connection with the use of Taxiway BB, and negligently failed to hire, direct, oversee, supervise and coordinate the activities of the Agents with regard to the use of Taxiway BB and other taxiways at JFK Airport, which caused the Accident and damages to Plaintiff CSA claimed herein.

69.     Defendant Port Authority also failed to design and/or implement the usage of hardstands in a reasonable and prudent manner for the aircraft that it and/or the Agents instructed to use the hardstands, including the placement of a B777-300 at Hardstand 63, and thereby caused the obstruction of the Kuwait Aircraft into Taxiway BB, the Accident and the damages

claimed by Plaintiff CSA herein.

70.  The foregoing acts and omissions of Defendant Port Authority and/or the Agents proximately caused the Accident and the damages sustained by CSA.

71.  By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

### THIRD CAUSE OF ACTION – GROSS NEGLIGENCE
### (as against defendant the Port Authority)

72.  CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "71", with the same force and effect as if more fully set forth at length herein.

73.  Defendant Port Authority failed to design and/or implement the usage of hardstands in a manner such that the aircraft that it and/or the Agents instructed to use the hardstands, including the placement of a B777-300 at Hardstand 63, would not cause an obstruction of Taxiway BB.

74.  The Port Authority upon implementing the usage of Hardstand 63 for B777-300 aircraft whereby such aircraft would knowingly obstruct Taxiway BB was reckless and acted in complete disregard of safety for persons and property.

75.  The Port Authority's implementing the usage of Hardstand 63 for B777-300 aircraft whereby such aircraft would knowingly obstruct Taxiway BB constituted gross negligence.

76.  The foregoing acts and omissions of Defendant Port Authority proximately caused the

Accident and the damages sustained by CSA.

77. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

**FOURTH CAUSE OF ACTION  - BREACH OF CONTRACT**
**<u>(as against defendant Swissport)</u>**

78. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs number "l" through "77" with the same force and effect as if more fully set forth herein.

79. At all times relevant, a written agreement has been and continues to be in full force and effect as between Plaintiff CSA and Defendant Swissport ("the Swissport Agreement") with regard to, among other things, cargo services, ramp handling, gate services and aircraft maintenance provided by Swissport at JFK Airport.

80. Pursuant to the Swissport Agreement, Swissport agreed to provide safe and secure ground handling services, coordinate with all third-parties at JFK airport, and to ensure that CSA's service standards would be met.

81. By virtue of the Swissport Agreement, Defendant Swissport was obligated to ensure, among other things, safe passage, ingress and egress through Taxiway BB and to Hardstand 73.

82. Defendant Swissport failed to secure the safe passage, ingress and egress through Taxiway BB and to Hardstand 73.

83. Defendant Swissport's failure to secure the safe passage, ingress and egress of the CSA Aircraft through Taxiway BB was the cause of the Accident and damages sustained by Plaintiff.

84. Defendant Swissport's failure to secure the safe passage, ingress and egress of the CSA Aircraft through Taxiway BB was a material breach of the Swissport Agreement.

85. The breach of the Swissport Agreement by Defendant Swissport was the cause in fact and legal cause of the Accident and damages sustained by Plaintiff.

86. CSA performed all conditions precedent, covenants, and promises in accordance with the terms and conditions of the Swissport Agreement.

87. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to CSA's alleged liability to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

## FIFTH CAUSE OF ACTION- NEGLIGENCE
### (as against defendant Swissport)

88. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "87", with the same force and effect as if more fully set forth at length herein.

89. Defendant Swissport owed a duty to Plaintiff CSA to move the CSA Aircraft and park and/or move the Kuwait Aircraft in such a manner so that the two aircraft would not come into contact.

90. Defendant Swissport failed to move the CSA Aircraft and park and/or move the Kuwait Aircraft in such a manner that the two aircraft would not come into contact.

91.     Swissport failed to park and/or tow and/or locate the Kuwait Aircraft in such a manner that the Kuwait Aircraft would not obstruct Taxiway BB.

92.     Defendant Swissport's acts and omissions of permitting and not preventing the CSA Aircraft to traverse Taxiway BB, at a time when Defendant Swissport knew or should have known that Taxiway BB was obstructed by the Kuwait Aircraft and/or closed to aircraft greater than Category III and/or open only to A320 and B737 aircraft, caused the Accident and damages to Plaintiff CSA.

93.     Defendant Swissport was negligent by its acts and omissions in connection with the placement of the Kuwait Aircraft, the towing of the CSA Aircraft, the use of Taxiway BB, and its failure to secure the safe and secure ground handling of the CSA Aircraft through Taxiway BB and other taxiways at JFK Airport, all of which caused the Accident and damages to Plaintiff CSA.

94.     The foregoing acts and omissions of Defendant Swissport proximately caused the Accident and the damages sustained by CSA.

95.     By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

## SIXTH CAUSE OF ACTION – NEGLIGENCE PER SE
### (as against defendant Swissport)

96.     CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "95", with the same force and effect as if more fully set

forth at length herein.

97.   Section 245(1) of the New York General Business Law prohibits the operation of an aircraft in a careless or reckless manner so as to endanger the life or property of others.

98.   Swissport's movement of the CSA Aircraft and placement and/or movement of the Kuwait Aircraft constituted careless and reckless operation of one or both aircraft that endangered the life and/or property of others.

99.   Swissport's careless and reckless operation of one or both aircraft was the proximate cause of the Accident and the damages sustained by CSA.

100.  Swissport's acts and omissions with regard to either or both aircraft violated Section 245(1) of the General Business Law of New York.

101.  By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

### SEVENTH CAUSE OF ACTION – GROSS NEGLIGENCE
### (as against defendant Swissport)

102.  CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "101", with the same force and effect as if more fully set forth at length herein.

103.  Defendant Swissport owed a duty to Plaintiff CSA to provide safe and secure ground handling of the CSA Aircraft in light of the fact that Taxiway BB was obstructed by other Swissport personnel who were responsible for the Kuwait Aircraft and all of whom knew

that Taxiway BB was open for only aircraft of Category III or less and/or open only to A320 and B737 aircraft.

104.   Swissport knowingly obstructed Taxiway BB to other aircraft by its placement of the Kuwait Aircraft at Hardstand 63.

105.   Defendant Swissport, while knowing that Taxiway BB was obstructed by the Kuwait Aircraft, was reckless and acted in complete disregard of safety for persons and property by proceeding down Taxiway BB with the CSA Aircraft.

106.   Defendant Swissport's towing of the CSA Aircraft down Taxiway BB while knowing that it was obstructed by the Kuwait Aircraft constituted gross negligence.

107.   Swissport's knowing and reckless placement of the Kuwait Aircraft into Taxiway BB and its failure to adequately warn CSA and/or the persons towing the CSA Aircraft constituted gross negligence.

108.   The foregoing acts and omissions of Defendant Swissport proximately caused the Accident and the damages sustained by  CSA.

109.   By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

## EIGHTH CAUSE OF ACTION - BREACH OF CONTRACT
### (as against defendant Delta)

110.   CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs number "l" through "109" with the same force and effect as if more fully set

forth herein.

111.    At all times relevant, a written agreement has been and continues to be in full force and effect as between The Port Authority and/or JFKIAT and Defendant Delta ("the Delta Agreement") with regard to, among other things, the ground handling, communications with aircraft, use, occupancy, right of passage, operation and related fees in connection with certain taxiways, hardstands and other areas at JFK Airport.

112.    At all times relevant, a written agreement has been and continues to be in effect between CSA and JFKIAT ("the JFKIAT Agreement") which references various obligations and duties owed by Delta.

113.    Pursuant to the Delta Agreement and/or the JFKIAT Agreements, CSA has the right of ingress and egress by means of existing taxiways.

114.    By virtue of the Delta Agreement and/or the JFKIAT Agreement, Defendant Delta was obligated to ensure, among other things, safe passage, ingress and egress through Taxiway BB and to Hardstand 73 of the CSA Aircraft.

115.    CSA was a third party beneficiary of the Delta Agreement and entitled to various rights and benefits at JFK Airport.

116.    Defendant Delta failed to secure the safe passage, ingress and egress through Taxiway BB and to Hardstand 73 of the CSA Aircraft.

117.    By virtue of the Delta and/or JFKIAT Agreements, Delta was obligated to maintain Taxiway BB free of obstructions caused by aircraft not parked at a hardstand per the nosewheel stop line designations.

118.    Defendant Delta's failure to hire, supervise, direct and control competent employees with regard to the traversing of Taxiway BB and failure to secure the safe passage, ingress and

egress of the CSA Aircraft was a material breach of the Delta Agreement and/or the JFKIAT Agreement.

119. The breaches of the Delta and/or JFKIAT Agreements by Defendant Delta was the cause in fact and legal cause of the Accident and damages sustained by Plaintiff.

120. CSA performed all conditions precedent, covenants, and promises in accordance with the terms and conditions of applicable agreements.

121. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to CSA's alleged liability to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

## NINTH CAUSE OF ACTION- NEGLIGENCE
### (as against defendant Delta)

122. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "121", with the same force and effect as if more fully set forth at length herein.

123. Defendant Delta owed a duty to Plaintiff CSA to prevent the CSA Aircraft from traversing Taxiway BB at a time when Defendant Delta knew or should have known that Taxiway BB was obstructed by the Kuwait Aircraft and/or closed to aircraft greater than Category III and/or open only to A320 and B737 aircraft.

124. Defendant Delta failed to advise and/or notify Plaintiff CSA and/or its agents that Taxiway BB was obstructed by the Kuwait Aircraft, open for only aircraft Category III or less and/or open only to A320 and B737 aircraft.

125. Defendant Delta's acts and omissions of directing, authorizing, permitting and not

preventing the CSA Aircraft to traverse Taxiway BB at a time when Defendant Delta knew or should have known that Taxiway BB was obstructed by the Kuwait Aircraft and/or closed to aircraft greater than Category III and/or open only to A320 and B737 aircraft caused the Accident and the damages to Plaintiff CSA claimed herein.

126.   Accordingly, Defendant Delta negligently performed its duties in connection with the use of Taxiway BB, and negligently failed to hire, direct, oversee, supervise and coordinate the activities of its employees with regard to the use of Taxiway BB and other taxiways at JFK Airport, which caused the Accident and damages to Plaintiff CSA claimed herein.

127.   The foregoing acts and omissions of Defendant Delta proximately caused the Accident and the damages sustained by CSA.

128.   By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

## TENTH CAUSE OF ACTION – GROSS NEGLIGENCE
### (as against defendant Delta)

129.   CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "128", with the same force and effect as if more fully set forth at length herein.

130.   Defendant Delta failed to coordinate, instruct, and/or implement protocols for the usage of hardstands in a manner such that the aircraft that it and/or others instructed to use the hardstands, including the placement of a B777-300 at Hardstand 63, would not cause an

obstruction of Taxiway BB.

131. Delta instructed the CSA Aircraft to traverse Taxiway BB at the time that Delta knew Taxiway BB was closed to aircraft greater than Category III and/or open only to A320 and B737 aircraft.

132. Defendant Delta, upon implementing the usage of Hardstand 63 for B777-300 aircraft whereby such aircraft would knowingly obstruct Taxiway BB, acted recklessly with complete disregard of safety for persons and property.

133. Defendant Delta's implementing the usage of Hardstand 63 for B777-300 aircraft whereby such aircraft would knowingly obstruct Taxiway BB constituted gross negligence.

134. Delta's instruction to the CSA Aircraft to traverse Taxiway BB and the lack of warning of the Kuwait Aircraft obstruction, at a time when Delta knew the Kuwait Aircraft was obstructing Taxiway BB, constituted gross negligence.

135. The foregoing acts and omissions of Defendant Delta proximately caused the Accident and the damages sustained by CSA.

136. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

### ELEVENTH CAUSE OF ACTION - BREACH OF CONTRACT
### (as against defendant JFKIAT)

137. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs number "l" through "136" with the same force and effect as if more fully set

forth herein.

138. At all times relevant, a written agreement has been and continues to be in full force and effect as between Plaintiff CSA and Defendant JFKIAT with regard to, among other things, the use, occupancy, right of passage, operation and related fees in connection with certain taxiways, hardstands and other areas at JFK Airport.

139. Pursuant to the agreement, CSA, has the right of ingress and egress by means of existing taxiways.

140. By virtue of the agreement, Defendant JFKIAT was obligated to ensure, among other things, safe passage, ingress and egress through Taxiway BB and to Hardstand 73.

141. Defendant JFKIAT failed to secure the safe passage, ingress and egress through Taxiway BB and to Hardstand 73 as it was obligated to do by the agreement.

142. Defendant JFKIAT's failure to hire, supervise, direct and control competent employees with regard to the traversing of Taxiway BB, where CSA was directed to taxi the CSA Aircraft, was the cause of the Accident and damages sustained by Plaintiff.

143. Defendant JFKIAT's failure to hire, supervise, direct and control competent employees with regard to the traversing of Taxiway BB and failure to secure the safe passage, ingress and egress of the CSA Aircraft was a material breach of the agreement between CSA and Defendant JFKIAT.

144. The breaches of the agreement by Defendant JFKIAT was the cause in fact and legal cause of the Accident and damages sustained by Plaintiff.

145. CSA performed all conditions precedent, covenants, and promises in accordance with the terms and conditions of the parties' agreement.

146. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial,

but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to CSA's alleged liability to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

**TWELFTH CAUSE OF ACTION- NEGLIGENCE**
**(as against defendant JFKIAT)**

147.   CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "146", with the same force and effect as if more fully set forth at length herein.

148.   Defendant JFKIAT owed a duty to Plaintiff CSA to prevent the CSA Aircraft from traversing Taxiway BB at a time when Defendant JFKIAT knew or should have known that Taxiway BB was obstructed by the Kuwait Aircraft and/or closed to aircraft greater than Category III and/or open only to A320 and B737 aircraft.

149.   Defendant JFKIAT failed to advise and/or notify Plaintiff CSA and/or its agents that Taxiway BB was obstructed by the Kuwait Aircraft, open for only aircraft Category III or less and/or open only to A320 and B737 aircraft.

150.   Defendant JFKIAT's acts and omissions of directing, authorizing, permitting and not preventing the CSA Aircraft to traverse Taxiway BB at a time when Defendant JFKIAT knew or should have known that Taxiway BB was obstructed by the Kuwait Aircraft and/or closed to aircraft greater than Category III and/or open only to A320 and B737 aircraft caused the Accident and the damages to Plaintiff CSA claimed herein.

151.   Accordingly, Defendant JFKIAT negligently performed its duties in connection with the use of Taxiway BB, and negligently failed to hire, direct, oversee, supervise and coordinate the activities of its employees with regard to the use of Taxiway BB and other taxiways at

JFK Airport, which caused the Accident and damages to Plaintiff CSA claimed herein.

152.  Defendant JFKIAT also failed to design and/or implement the usage of hardstands in a reasonable and prudent manner for the aircraft that it and/or the Agents instructed to use the hardstands, including the placement of a B777-300 at Hardstand 63, and thereby caused the obstruction of the Kuwait Aircraft into Taxiway BB, the Accident and the damages claimed by Plaintiff CSA herein.

153.  The foregoing acts and omissions of Defendant JFKIAT proximately caused the Accident and the damages sustained by CSA.

154.  By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

## THIRTEENTH CAUSE OF ACTION – GROSS NEGLIGENCE
### (as against defendant JFKIAT)

155.  CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "154", with the same force and effect as if more fully set forth at length herein.

156.  Defendant JFKIAT failed to design and/or implement the usage of hardstands in a manner such that the aircraft that it instructed to use the hardstands, including the placement of a B777-300 at Hardstand 63, would not cause an obstruction of Taxiway BB.

157.  JFKIAT instructed the CSA Aircraft to traverse Taxiway BB at the time that JFKIAT knew Taxiway BB was closed to aircraft greater than Category III and/or open only to A320 and

B737 aircraft.

158. Defendant JFKIAT upon implementing the usage of Hardstand 63 for B777-300 aircraft whereby such aircraft would knowingly obstruct Taxiway BB was reckless and acted in complete disregard of safety for persons and property.

159. Defendant JFKIAT's implementing the usage of Hardstand 63 for B777-300 aircraft whereby such aircraft would knowingly obstruct Taxiway BB constituted gross negligence.

160. JFKIAT's instruction to the CSA Aircraft to traverse Taxiway BB and lack of warning of the Kuwait Aircraft obstruction, at the time when JFKIAT knew the Kuwait Aircraft was obstructing Taxiway BB, constituted gross negligence.

161. The foregoing acts and omissions of Defendant JFKIAT proximately caused the Accident and the damages sustained by CSA.

162. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

## FOURTEENTH CAUSE OF ACTION- NEGLIGENCE
### (as against defendant Kuwait)

163. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "162", with the same force and effect as if more fully set forth at length herein.

164. As of the time of the Accident and prior thereto, the Kuwait Aircraft was parked at Hardstand 63 in such a manner as the nosewheel was not at the stop mark designated on

the ground for B777-300 aircraft.

165.   Defendant Kuwait knew or should have known that as a result of the manner in which the Kuwait Aircraft was parked in Hardstand 63, Taxiway BB was partially obstructed by the Kuwait Aircraft.

166.   Defendant Kuwait owed a duty to other aircraft operators, including CSA, to provide adequate warning of the partial obstruction of Taxiway BB caused by the Kuwait Aircraft.

167.   Given the manner in which it was parked in Hardstand 63, Defendant Kuwait failed to advise and/or notify Plaintiff CSA and or its agents and/or other third parties in an adequate manner that Taxiway BB was obstructed by the Kuwait Aircraft.

168.   Defendant Kuwait's acts and omissions of obstructing Taxiway BB and failing to instruct, and/or notify and/or coordinate with Plaintiff CSA and/or its agents and/or other third parties concerning the manner in which its B777-300 was parked in Hardstand 63 caused the Accident and the damages to Plaintiff CSA claimed herein.

169.   Accordingly, Defendant Kuwait negligently performed its duties in connection with the use Hardstand 63 and Taxiway BB, and negligently failed to advise, notify and/or coordinate its activities and movements with regard to the use of Hardstand 63, Taxiway BB and other taxiways at JFK Airport, which caused the Accident and damages to Plaintiff CSA claimed herein.

170.   The foregoing acts and omissions of Defendant Kuwait proximately caused the Accident and the damages sustained by CSA.

171.   By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three eight hundred thousand United States Dollars) for damage to property, diminution in value of

the CSA Aircraft, and business interruption, together with interest and costs.

## FIFTEENTH CAUSE OF ACTION – NEGLIGENCE PER SE
### (as against defendant Kuwait)

172.   CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "171", with the same force and effect as if more fully set forth at length herein.

173.   Section 245(1) of the New York General Business Law prohibits the operation of an aircraft in a careless or reckless manner so as to endanger the life or property of others.

174.   Defendant Kuwait and/or its agents' placement and/or movement of the Kuwait Aircraft constituted careless and reckless operation of that aircraft that endangered the life and/or property of others.

175.   Defendant Kuwait's careless and reckless operation of its aircraft was the proximate cause of the Accident and the damages sustained by CSA.

176.   Defendant Kuwait's acts and omissions with regard to its aircraft violated Section 245(1) of the General Business Law of New York.

177.   Section 245(10)(b) of the New York Business Law requires between the hours of sunset and sunrise that all aircraft parked or moved within or in dangerous proximity to that part of any airport used for, or available to, night flight operations be clearly illuminated or lighted unless the aircraft is parked or moved in an area with obstruction lights.

178.   The Kuwait Aircraft prior to and at the time of the Accident was parked in and/or in dangerous proximity to, between the hours or sunset and sunrise, that part of JFK Airport used for and/or available to night flight operations, including but not limited to Taxiway BB.

179.   The Kuwait Aircraft prior to and at the time of the Accident was not clearly illuminated

and lighted.

180. The area in which the Kuwait Aircraft was parked was not illuminated by obstruction lights.

181. The tail of the Kuwait Aircraft that created an obstruction into Taxiway BB was not illuminated by obstruction lights.

182. The failure of Defendant Kuwait to illuminate and light clearly the Kuwait Aircraft was the proximate cause of the Accident and the damages sustained by CSA.

183. Defendant Kuwait's acts and omissions with regard to lack of clear illumination and lighting of the Kuwait Aircraft violated Section 245(10)(b) of the New York Business Law.

184. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, together with interest and costs.

## SIXTEENTH CAUSE OF ACTION- GROSS NEGLIGENCE
### (as against defendant Kuwait)

185. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "184", with the same force and effect as if more fully set forth at length herein.

186. As of the time of the Accident and prior thereto, the Kuwait Aircraft was parked at Hardstand 63 in such a manner as the nosewheel was not at the stop mark designated on the ground for B777-300 aircraft.

187. Given the manner in which the Kuwait Aircraft was parked, Defendant Kuwait knew that its aircraft was obstructing Taxiway BB.

188. Kuwait owed a duty to other aircraft operators, including CSA, to warn of the partial obstruction of Taxiway BB caused by the Kuwait Aircraft.

189.   Defendant Kuwait failed to warn, coordinate, instruct, and/or implement appropriate measures so that its aircraft would not cause an obstruction of Taxiway BB.

190.   Defendant Kuwait, in knowingly obstructing Taxiway BB, acted recklessly and with complete disregard of safety for persons and property.

191.   Defendant Kuwait's knowing obstruction of Taxiway BB and its failure to rectify the manner in which its Aircraft was parked constituted gross negligence.

192.   Defendant Kuwait's knowing obstruction of Taxiway BB at a time in which it knew that the likelihood of another aircraft coming into contact with the Kuwait Aircraft was greatly increased constituted gross negligence.

193.   The foregoing acts and omissions of Defendant Kuwait proximately caused the Accident and the damages sustained by CSA.

194.   By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, together with interest and costs.

WHEREFORE, Plaintiff CSA demands judgment as follows:

a.   On the First Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs, and

b.   On the Second Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three

thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

c.  On the Third Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

d.  On the Fourth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

e.  On the Fifth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

f.  On the Sixth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

g.  On the Seventh Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

h.  On the Eighth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

i.  On the Ninth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

j.  On the Tenth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

k.  On the Eleventh Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value

of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

l.  On the Twelfth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

m.  On the Thirteenth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

n.  On the Fourteenth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, together with interest and costs,

o.  On the Fifteenth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, together with interest and costs,

p.  On the Sixteenth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value

of the CSA Aircraft, and business interruption, together with interest and costs,

and that Plaintiff be granted such other, further and different relief as this court may deem

just, proper and equitable.

PLAINTIFF DEMANDS TRIAL BY JURY as to all parties other than Defendant Kuwait.

Dated: May 1, 2019
       New York, New York


                         LEADER BERKON COLAO
                         & SILVERSTEIN LLP

            By:     /s/ Raymond L. Mariani
                         RAYMOND L. MARIANI
                         rmariani@leaderberkon.com
                         BRIAN K. CIFUENTES
                         bcifuentes@leaderberkon.com
                         630 Third Avenue
                         New York, New York 10017
                         P (212) 486-2400
                         F (212) 486-3099