# Exhibit A to Third Party Complaint by Swissport USA, Inc.

**China Southern Airlines Co., LTD. v. Swissport USA, Inc. et al.**

**U.S. District Court; Eastern District of NY; Case No. 1:18-cv-07454**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHINA SOUTHERN AIRLINES CO., LTD., | |
|       Plaintiff, | |
| v. | |
| THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, SWISSPORT USA, INC., DELTA AIR LINES, INC., JFK INTERNATIONAL AIR TERMINAL LLC, and KUWAIT AIRWAYS CORPORATION, | **SECOND AMENDED COMPLAINT** <br><br> 1:18-cv-07454 (RJD) (VMS) |
|       Defendants. | |

Plaintiff CHINA SOUTHERN AIRLINES CO., LTD. ("CSA"), complaining of the defendants THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, SWISSPORT USA, INC., DELTA AIR LINES, INC., JFK INTERNATIONAL AIR TERMINAL LLC, and KUWAIT AIRWAYS CORPORATION (collectively, "Defendants"), alleges in this Second Amended Complaint as follows:

## NATURE OF THE ACTION

1.    This is an action to recover money damages in connection with a) an indemnity claim for alleged property damage to a Kuwait Airways 777-300ER aircraft 9K-AOC ("the Kuwait Aircraft") and b) property and related damage to Plaintiff CSA's 777-300ER aircraft bearing registration number B-7185 ("the CSA Aircraft"), all of which arose from an accident at John F. Kennedy International Airport in Queens, New York ("JFK Airport") on January 5, 2018 ("the Accident"), as well as to recover lost profits, fees, costs and expenses in connection with the Accident and property damage.

1

## JURISDICTION AND VENUE

2.      Plaintiff is a foreign corporation with its principal place of business in China.

3.      Plaintiff is authorized to do business in the United States and the State of New York.

4.      Defendant The Port Authority of New York and New Jersey ("Defendant Port Authority") is a bi-state transportation agency that manages *inter alia* certain airports in the New York metropolitan area, including JFK Airport.

5.      At all relevant times, Defendant Port Authority was and has been continuously doing business in the States of New York and New Jersey.

6.      Defendant Swissport USA, Inc. ("Defendant Swissport") is a Delaware corporation that provides *inter alia* cargo services, ramp handling, gate services and aircraft maintenance at airports worldwide, including JFK airport.

7.      At all relevant times, Defendant Swissport was and has been continuously doing business in the State of New York.

8.      Defendant Delta Air Lines, Inc. ("Defendant Delta") is a Delaware corporation that operates and provides *inter alia* flights and ground control services at airports worldwide, including JFK airport.

9.      At all relevant times, Defendant Delta was and has been continuously doing business in the State of New York.

10.     Defendant JFK International Air Terminal LLC ("Defendant JFKIAT") is a New York limited liability company that operates Terminal 4 at JFK airport.

11.     At all relevant times, Defendant JFKIAT was and has been continuously doing business in the State of New York.

12.     At all relevant times, Kuwait Airways Corporation ("Defendant Kuwait") was and has been

an agency and/or instrumentality of the foreign state of Kuwait, as defined by 28 U.S.C. §1603(b).

13. At all relevant times, Defendant Kuwait was and has been owned 100 percent by the government of the nation state of Kuwait.

14. By virtue of being an agency or instrumentality of a foreign state, Defendant Kuwait was and has been at all relevant times a foreign state, as defined by 28 U.S.C. §1603(a).

15. At all relevant times, Defendant Kuwait was and has been continuously doing business in the State of New York.

16. At all relevant times, Defendant Kuwait was and has been an airline that operates flights at airports worldwide, including JFK airport.

17. At all relevant times, Defendant Kuwait was and has carried on commercial activity in the United States as defined by 28 U.S.C. §1603(d) in the form of a regular course of commercial conduct by operating flights into and out of airports in the United States, including JFK Airport.

18. The parking of the Kuwait Aircraft at Hardstand 63 and its partial obstruction of Taxiway BB was part of the commercial activity carried on by Defendant Kuwait in the United States.

19. Defendant Kuwait prior to and as of the time of the Accident carried on commercial activity other than in the United States, including but not limited to the direction, control and operation of the Kuwait Aircraft.

20. The parking of the Kuwait Aircraft at Hardstand 63 and its partial obstruction of Taxiway BB was performed in connection with the commercial activities of Kuwait outside the United States.

21. The cockpit crew and other personnel of Defendant Kuwait aboard the Kuwait Aircraft, and all other personnel of Kuwait who caused or contributed to the Kuwait Aircraft parking at Hardstand 63 and partially obstructing Taxiway BB, acted within the scope of their office and employment at all relevant times.

22. This action is based upon a commercial activity carried on by defendant Kuwait in the United States, namely the regular course of operating flights into and out of airports in the United States, including JFK Airport, and the Kuwait Aircraft parking at Hardstand 63 and partially obstructing Taxiway BB.

23. This action is based upon an act performed in the United States by Defendant Kuwait, namely the Kuwait Aircraft landing at JFK Airport and parking at Hardstand 63 and partially obstructing Taxiway BB, in connection with a commercial activity carried on by defendant Kuwait outside the United States, namely the direction and control of operation of the Kuwait Aircraft by agents of defendant Kuwait in locations outside the United States.

24. This action is for money damages sought against Defendant Kuwait for damage to and loss of property occurring in the United States caused by the tortious acts and omissions of defendant Kuwait and its officials and employees, all of whom did so while acting within the scope and office of their employment.

25. This Court has jurisdiction over Defendant Kuwait pursuant to 28 U.S.C. 1330 based on it being a foreign state as defined by 28 U.S.C. 1603(a) and not being entitled to immunity under 28 U.S.C. 1605-1607 or under any applicable international agreements.

26. This Court has jurisdiction over all parties other than Kuwait pursuant to 28 U.S.C. § 1332 as the citizenship of the parties is diverse and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

27. This Court has *in personam* jurisdiction over all Defendants pursuant to New York Civil Practice Law and Rules sections 301 and 302. Defendants conduct business in the State of New York in connection with the provision of services for common carriers, airport operations, and airport safety.

28. This Court has *in personam* jurisdiction over Defendant Kuwait also by virtue of service of process pursuant to 28 U.S.C. 1330(b) and 28 U.S.C. 1608.

29. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), and 65 McKinney's Cons. Laws of NY § 7106.

## FACTS COMMON TO ALL CLAIMS

30. On January 5, 2018, the CSA Aircraft was legally authorized to be present within JFK Airport.

31. On January 5, 2018 the CSA Aircraft was being towed by defendant Swissport.

32. On January 5, 2018, defendant Kuwait's Aircraft was located at an area of JFK Airport designated by a particular number and remote from Terminal 4, namely a "hardstand" bearing number 63.

33. On January 5, 2018, Defendant Swissport was hired by Kuwait Airways and/or other entities to move the Kuwait Aircraft into and out of Hardstand 63 in a manner that would not cause damage to the Kuwait Aircraft and would not cause damage to other aircraft.

34. As of the time of the Accident and prior thereto, the Kuwait Aircraft was parked at Hardstand 63 in such a manner as the nosewheel was not at the stop mark designated on the ground for B777-300 aircraft.

35. As of the time of the Accident and prior thereto, agents of defendant The Port Authority, including but not limited to defendant JFKIAT and defendant Delta ("the

Agents"), were under its employ, direction, control, supervision and contractual obligation with regard to the instructions communicated to aircraft concerning movement at JFK Airport, including the CSA Aircraft and Kuwait Aircraft.

36. As of the time of the Accident and prior thereto, the Agents instructed that the Kuwait Aircraft park at Hardstand 63.

37. As of the time of the Accident, the Kuwait Aircraft was partially obstructing Taxiway BB.

38. As of the time of the Accident, defendant the Port Authority and/or defendant JFKIAT controlled the design, maintenance, and designation of hardstands at JFK Airport.

39. As of the time of the Accident, Defendants knew or should have known that a B777-300 located in Hardstand 63 with its nosewheel at the designated stop mark cannot obtain complete access to all cargo doors due to the placement of a light pole in the ground.

40. As of the time of the Accident, Defendants did or should have communicated to the Agents that a B777-300 located in Hardstand 63 with its nosewheel at the designated stop mark cannot obtain complete access to all cargo doors due to the placement of a light pole in the ground.

41. No Defendant communicated to CSA or to the persons performing the towing of the CSA Aircraft, via NOTAM or other means, that the Kuwait Aircraft was partially obstructing Taxiway BB.

42. As of the time of the Accident, a B777-300 located at Hardstand 63 with its nosewheel at the designated stopmark precluded access to one of the forward cargo/other doors due to the placement of a light pole in the ground.

43. As of the time of the Accident and prior thereto, Defendants knew or should have known that, as a result of the manner in which the Kuwait Aircraft was parked at Hardstand 63,

6

the Kuwait Aircraft was obstructing part of Taxiway BB.

44. Prior to the Accident, Defendants knew or should have known that the Kuwait Aircraft required more lighting, linepersons with illuminated wands and/or other means of making the Kuwait Aircraft visible to persons operating the Aircraft on Taxiway BB than would otherwise be necessary had the Kuwait Aircraft not been obstructing Taxiway BB.

45. Prior to the Accident, the Agents instructed that defendant Swissport tow the CSA Aircraft through Taxiway BB in order to park at Hardstand 73.

46. Prior to instructing defendant Swissport to move the CSA Aircraft through Taxiway BB, one or more of the Agents closed or attempted to close Taxiway BB to aircraft in excess of Category III and limited Taxiway BB to only A320 and B737 aircraft.

47. Prior to directing that defendant Swissport bring the CSA Aircraft onto Taxiway BB, the Agents knew or should have known that aircraft in excess of Category III should not traverse Taxiway BB due to the Kuwait Aircraft obstruction.

48. While defendant Swissport was towing the CSA Aircraft on Taxiway BB, and given the manner in which the Kuwait Aircraft was obstructing Taxiway BB, Defendants knew or should have known that the CSA Aircraft would come into contact with the Kuwait Aircraft.

49. While the Kuwait Aircraft was parked at Hardstand 63, Defendants knew or should have known that, as a result of the manner in which the Kuwait Aircraft was obstructing Taxiway BB, the likelihood of another aircraft coming into contact with the Kuwait Aircraft was greatly increased.

50. While the CSA Aircraft was being towed by Swissport on Taxiway BB, the CSA Aircraft came into contact with the Kuwait Aircraft.

51.     The contact between the CSA Aircraft and the Kuwait Aircraft caused damage to the CSA Aircraft.

52.     Kuwait Airways has alleged in a letter of claim to CSA that the contact between the Kuwait Aircraft and CSA Aircraft caused damage to the Kuwait Aircraft in an amount in excess of $12,000,000.00 (twelve million United States dollars) and that Kuwait intends to seek recovery of the alleged damages from Plaintiff CSA.

53.     CSA filed a Notice of Claim with Defendant Port Authority on October 23, 2018, thereby satisfying the statutory requirement for service of notice before initiation of a lawsuit against Defendant Port Authority.

## FIRST CAUSE OF ACTION  - BREACH OF CONTRACT
### (as against defendant the Port Authority)

54.     CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs number "l" through "53" with the same force and effect as if more fully set forth herein.

55.     At all times relevant, written agreements have been and continue to be in full force and effect as between Plaintiff CSA and Defendant Port Authority and/or the Agents with regard to, among other things, the use, occupancy, right of passage, operation and related fees in connection with certain taxiways, hardstands and other areas at JFK Airport.

56.     Pursuant to those agreements, CSA, has the right of ingress and egress by means of existing taxiways.

57.     By virtue of these agreements, Defendant Port Authority and/or the Agents were obligated to ensure, among other things, safe passage, ingress and egress through Taxiway BB and to Hardstand 73.

58.     Defendant Port Authority acting by and through the Agents failed to secure the safe

passage, ingress and egress through Taxiway BB and to Hardstand 73 as it was obligated to do by these agreements.

59. Defendant Port Authority's failure to hire, supervise, direct and control competent agents with regard to the traversing of Taxiway BB, where CSA was directed by the Agents to taxi the CSA Aircraft, was the cause of the Accident and damages sustained by Plaintiff.

60. Defendant Port Authority's failure to hire, supervise, direct and control competent agents with regard to the traversing of Taxiway BB and failure to secure the safe passage, ingress and egress of the CSA Aircraft was a material breach of those agreements between CSA and Defendant Port Authority and/or the Agents, which agreements entitled CSA to the use, occupancy, right of passage, and operation upon the taxiways, including Taxiway BB.

61. The breaches of the agreements by Defendant Port Authority and/or the Agents was the cause in fact and legal cause of the Accident and damages sustained by Plaintiff.

62. CSA performed all conditions precedent, covenants, and promises in accordance with the terms and conditions of the parties' agreements.

63. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to CSA's alleged liability to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

## SECOND CAUSE OF ACTION- NEGLIGENCE
### (as against defendant the Port Authority)

64. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "63" with the same force and effect as if more fully set forth at length herein.

65. Defendant Port Authority directed, authorized, permitted and/or did not prevent the Agents from instructing the CSA Aircraft to traverse Taxiway BB at a time when Defendant Port Authority and/or the Agents knew or should have known that Taxiway BB was obstructed by the Kuwait Aircraft and/or closed to aircraft greater than Category III and/or open only to A320 and B737 aircraft.

66. Defendant Port Authority failed to advise and/or notify Plaintiff CSA and/or its agents that Taxiway BB was obstructed by the Kuwait Aircraft, open for only aircraft Category III or less and/or open only to A320 and B737 aircraft.

67. Defendant Port Authority's act and omissions of directing, authorizing, permitting and not preventing the Agents from instructing the CSA Aircraft to traverse Taxiway BB at a time when Defendant Port Authority and/or the Agents knew or should have known that Taxiway BB was obstructed by the Kuwait Aircraft and/or closed to aircraft greater than Category III and/or open only to A320 and B737 aircraft caused the Accident and the damages to Plaintiff CSA claimed herein.

68. Accordingly, Defendant Port Authority negligently performed its duties in connection with the use of Taxiway BB, and negligently failed to hire, direct, oversee, supervise and coordinate the activities of the Agents with regard to the use of Taxiway BB and other taxiways at JFK Airport, which caused the Accident and damages to Plaintiff CSA claimed herein.

69. Defendant Port Authority also failed to design and/or implement the usage of hardstands in a reasonable and prudent manner for the aircraft that it and/or the Agents instructed to use the hardstands, including the placement of a B777-300 at Hardstand 63, and thereby caused the obstruction of the Kuwait Aircraft into Taxiway BB, the Accident and the damages

claimed by Plaintiff CSA herein.

70.   The foregoing acts and omissions of Defendant Port Authority and/or the Agents proximately caused the Accident and the damages sustained by CSA.

71.   By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

### THIRD CAUSE OF ACTION – GROSS NEGLIGENCE
### (as against defendant the Port Authority)

72.   CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "71", with the same force and effect as if more fully set forth at length herein.

73.   Defendant Port Authority failed to design and/or implement the usage of hardstands in a manner such that the aircraft that it and/or the Agents instructed to use the hardstands, including the placement of a B777-300 at Hardstand 63, would not cause an obstruction of Taxiway BB.

74.   The Port Authority upon implementing the usage of Hardstand 63 for B777-300 aircraft whereby such aircraft would knowingly obstruct Taxiway BB was reckless and acted in complete disregard of safety for persons and property.

75.   The Port Authority's implementing the usage of Hardstand 63 for B777-300 aircraft whereby such aircraft would knowingly obstruct Taxiway BB constituted gross negligence.

76.   The foregoing acts and omissions of Defendant Port Authority proximately caused the

Accident and the damages sustained by CSA.

77. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

## FOURTH CAUSE OF ACTION - BREACH OF CONTRACT
### (as against defendant Swissport)

78. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs number "l" through "77" with the same force and effect as if more fully set forth herein.

79. At all times relevant, a written agreement has been and continues to be in full force and effect as between Plaintiff CSA and Defendant Swissport ("the Swissport Agreement") with regard to, among other things, cargo services, ramp handling, gate services and aircraft maintenance provided by Swissport at JFK Airport.

80. Pursuant to the Swissport Agreement, Swissport agreed to provide safe and secure ground handling services, coordinate with all third-parties at JFK airport, and to ensure that CSA's service standards would be met.

81. By virtue of the Swissport Agreement, Defendant Swissport was obligated to ensure, among other things, safe passage, ingress and egress through Taxiway BB and to Hardstand 73.

82. Defendant Swissport failed to secure the safe passage, ingress and egress through Taxiway BB and to Hardstand 73.

83. Defendant Swissport's failure to secure the safe passage, ingress and egress of the CSA Aircraft through Taxiway BB was the cause of the Accident and damages sustained by Plaintiff.

84. Defendant Swissport's failure to secure the safe passage, ingress and egress of the CSA Aircraft through Taxiway BB was a material breach of the Swissport Agreement.

85. The breach of the Swissport Agreement by Defendant Swissport was the cause in fact and legal cause of the Accident and damages sustained by Plaintiff.

86. CSA performed all conditions precedent, covenants, and promises in accordance with the terms and conditions of the Swissport Agreement.

87. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to CSA's alleged liability to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

## FIFTH CAUSE OF ACTION- NEGLIGENCE
### (as against defendant Swissport)

88. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "87", with the same force and effect as if more fully set forth at length herein.

89. Defendant Swissport owed a duty to Plaintiff CSA to move the CSA Aircraft and park and/or move the Kuwait Aircraft in such a manner so that the two aircraft would not come into contact.

90. Defendant Swissport failed to move the CSA Aircraft and park and/or move the Kuwait Aircraft in such a manner that the two aircraft would not come into contact.

91.      Swissport failed to park and/or tow and/or locate the Kuwait Aircraft in such a manner that the Kuwait Aircraft would not obstruct Taxiway BB.

92.      Defendant Swissport's acts and omissions of permitting and not preventing the CSA Aircraft to traverse Taxiway BB, at a time when Defendant Swissport knew or should have known that Taxiway BB was obstructed by the Kuwait Aircraft and/or closed to aircraft greater than Category III and/or open only to A320 and B737 aircraft, caused the Accident and damages to Plaintiff CSA.

93.      Defendant Swissport was negligent by its acts and omissions in connection with the placement of the Kuwait Aircraft, the towing of the CSA Aircraft, the use of Taxiway BB, and its failure to secure the safe and secure ground handling of the CSA Aircraft through Taxiway BB and other taxiways at JFK Airport, all of which caused the Accident and damages to Plaintiff CSA.

94.      The foregoing acts and omissions of Defendant Swissport proximately caused the Accident and the damages sustained by CSA.

95.      By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

### SIXTH CAUSE OF ACTION – NEGLIGENCE PER SE
#### (as against defendant Swissport)

96.      CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "95", with the same force and effect as if more fully set

forth at length herein.

97. Section 245(1) of the New York General Business Law prohibits the operation of an aircraft in a careless or reckless manner so as to endanger the life or property of others.

98. Swissport's movement of the CSA Aircraft and placement and/or movement of the Kuwait Aircraft constituted careless and reckless operation of one or both aircraft that endangered the life and/or property of others.

99. Swissport's careless and reckless operation of one or both aircraft was the proximate cause of the Accident and the damages sustained by CSA.

100. Swissport's acts and omissions with regard to either or both aircraft violated Section 245(1) of the General Business Law of New York.

101. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

**SEVENTH CAUSE OF ACTION – GROSS NEGLIGENCE**
**(as against defendant Swissport)**

102. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "101", with the same force and effect as if more fully set forth at length herein.

103. Defendant Swissport owed a duty to Plaintiff CSA to provide safe and secure ground handling of the CSA Aircraft in light of the fact that Taxiway BB was obstructed by other Swissport personnel who were responsible for the Kuwait Aircraft and all of whom knew

15

that Taxiway BB was open for only aircraft of Category III or less and/or open only to A320 and B737 aircraft.

104. Swissport knowingly obstructed Taxiway BB to other aircraft by its placement of the Kuwait Aircraft at Hardstand 63.

105. Defendant Swissport, while knowing that Taxiway BB was obstructed by the Kuwait Aircraft, was reckless and acted in complete disregard of safety for persons and property by proceeding down Taxiway BB with the CSA Aircraft.

106. Defendant Swissport's towing of the CSA Aircraft down Taxiway BB while knowing that it was obstructed by the Kuwait Aircraft constituted gross negligence.

107. Swissport's knowing and reckless placement of the Kuwait Aircraft into Taxiway BB and its failure to adequately warn CSA and/or the persons towing the CSA Aircraft constituted gross negligence.

108. The foregoing acts and omissions of Defendant Swissport proximately caused the Accident and the damages sustained by CSA.

109. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

## EIGHTH CAUSE OF ACTION - BREACH OF CONTRACT
### (as against defendant Delta)

110. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs number "l" through "109" with the same force and effect as if more fully set

forth herein.

111. At all times relevant, a written agreement has been and continues to be in full force and effect as between The Port Authority and/or JFKIAT and Defendant Delta ("the Delta Agreement") with regard to, among other things, the ground handling, communications with aircraft, use, occupancy, right of passage, operation and related fees in connection with certain taxiways, hardstands and other areas at JFK Airport.

112. At all times relevant, a written agreement has been and continues to be in effect between CSA and JFKIAT ("the JFKIAT Agreement") which references various obligations and duties owed by Delta.

113. Pursuant to the Delta Agreement and/or the JFKIAT Agreements, CSA has the right of ingress and egress by means of existing taxiways.

114. By virtue of the Delta Agreement and/or the JFKIAT Agreement, Defendant Delta was obligated to ensure, among other things, safe passage, ingress and egress through Taxiway BB and to Hardstand 73 of the CSA Aircraft.

115. CSA was a third party beneficiary of the Delta Agreement and entitled to various rights and benefits at JFK Airport.

116. Defendant Delta failed to secure the safe passage, ingress and egress through Taxiway BB and to Hardstand 73 of the CSA Aircraft.

117. By virtue of the Delta and/or JFKIAT Agreements, Delta was obligated to maintain Taxiway BB free of obstructions caused by aircraft not parked at a hardstand per the nosewheel stop line designations.

118. Defendant Delta's failure to hire, supervise, direct and control competent employees with regard to the traversing of Taxiway BB and failure to secure the safe passage, ingress and

egress of the CSA Aircraft was a material breach of the Delta Agreement and/or the JFKIAT Agreement.

119. The breaches of the Delta and/or JFKIAT Agreements by Defendant Delta was the cause in fact and legal cause of the Accident and damages sustained by Plaintiff.

120. CSA performed all conditions precedent, covenants, and promises in accordance with the terms and conditions of applicable agreements.

121. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to CSA's alleged liability to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

## NINTH CAUSE OF ACTION- NEGLIGENCE
### (as against defendant Delta)

122. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "121", with the same force and effect as if more fully set forth at length herein.

123. Defendant Delta owed a duty to Plaintiff CSA to prevent the CSA Aircraft from traversing Taxiway BB at a time when Defendant Delta knew or should have known that Taxiway BB was obstructed by the Kuwait Aircraft and/or closed to aircraft greater than Category III and/or open only to A320 and B737 aircraft.

124. Defendant Delta failed to advise and/or notify Plaintiff CSA and/or its agents that Taxiway BB was obstructed by the Kuwait Aircraft, open for only aircraft Category III or less and/or open only to A320 and B737 aircraft.

125. Defendant Delta's acts and omissions of directing, authorizing, permitting and not

preventing the CSA Aircraft to traverse Taxiway BB at a time when Defendant Delta knew or should have known that Taxiway BB was obstructed by the Kuwait Aircraft and/or closed to aircraft greater than Category III and/or open only to A320 and B737 aircraft caused the Accident and the damages to Plaintiff CSA claimed herein.

126. Accordingly, Defendant Delta negligently performed its duties in connection with the use of Taxiway BB, and negligently failed to hire, direct, oversee, supervise and coordinate the activities of its employees with regard to the use of Taxiway BB and other taxiways at JFK Airport, which caused the Accident and damages to Plaintiff CSA claimed herein.

127. The foregoing acts and omissions of Defendant Delta proximately caused the Accident and the damages sustained by CSA.

128. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

## TENTH CAUSE OF ACTION – GROSS NEGLIGENCE
### (as against defendant Delta)

129. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "128", with the same force and effect as if more fully set forth at length herein.

130. Defendant Delta failed to coordinate, instruct, and/or implement protocols for the usage of hardstands in a manner such that the aircraft that it and/or others instructed to use the hardstands, including the placement of a B777-300 at Hardstand 63, would not cause an

obstruction of Taxiway BB.

131.  Delta instructed the CSA Aircraft to traverse Taxiway BB at the time that Delta knew Taxiway BB was closed to aircraft greater than Category III and/or open only to A320 and B737 aircraft.

132.  Defendant Delta, upon implementing the usage of Hardstand 63 for B777-300 aircraft whereby such aircraft would knowingly obstruct Taxiway BB, acted recklessly with complete disregard of safety for persons and property.

133.  Defendant Delta's implementing the usage of Hardstand 63 for B777-300 aircraft whereby such aircraft would knowingly obstruct Taxiway BB constituted gross negligence.

134.  Delta's instruction to the CSA Aircraft to traverse Taxiway BB and the lack of warning of the Kuwait Aircraft obstruction, at a time when Delta knew the Kuwait Aircraft was obstructing Taxiway BB, constituted gross negligence.

135.  The foregoing acts and omissions of Defendant Delta proximately caused the Accident and the damages sustained by CSA.

136.  By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

**ELEVENTH CAUSE OF ACTION - BREACH OF CONTRACT**
**(as against defendant JFKIAT)**

137.  CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs number "l" through "136" with the same force and effect as if more fully set

forth herein.

138. At all times relevant, a written agreement has been and continues to be in full force and effect as between Plaintiff CSA and Defendant JFKIAT with regard to, among other things, the use, occupancy, right of passage, operation and related fees in connection with certain taxiways, hardstands and other areas at JFK Airport.

139. Pursuant to the agreement, CSA, has the right of ingress and egress by means of existing taxiways.

140. By virtue of the agreement, Defendant JFKIAT was obligated to ensure, among other things, safe passage, ingress and egress through Taxiway BB and to Hardstand 73.

141. Defendant JFKIAT failed to secure the safe passage, ingress and egress through Taxiway BB and to Hardstand 73 as it was obligated to do by the agreement.

142. Defendant JFKIAT's failure to hire, supervise, direct and control competent employees with regard to the traversing of Taxiway BB, where CSA was directed to taxi the CSA Aircraft, was the cause of the Accident and damages sustained by Plaintiff.

143. Defendant JFKIAT's failure to hire, supervise, direct and control competent employees with regard to the traversing of Taxiway BB and failure to secure the safe passage, ingress and egress of the CSA Aircraft was a material breach of the agreement between CSA and Defendant JFKIAT.

144. The breaches of the agreement by Defendant JFKIAT was the cause in fact and legal cause of the Accident and damages sustained by Plaintiff.

145. CSA performed all conditions precedent, covenants, and promises in accordance with the terms and conditions of the parties' agreement.

146. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial,

but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to CSA's alleged liability to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

## TWELFTH CAUSE OF ACTION- NEGLIGENCE
### (as against defendant JFKIAT)

147. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "146", with the same force and effect as if more fully set forth at length herein.

148. Defendant JFKIAT owed a duty to Plaintiff CSA to prevent the CSA Aircraft from traversing Taxiway BB at a time when Defendant JFKIAT knew or should have known that Taxiway BB was obstructed by the Kuwait Aircraft and/or closed to aircraft greater than Category III and/or open only to A320 and B737 aircraft.

149. Defendant JFKIAT failed to advise and/or notify Plaintiff CSA and/or its agents that Taxiway BB was obstructed by the Kuwait Aircraft, open for only aircraft Category III or less and/or open only to A320 and B737 aircraft.

150. Defendant JFKIAT's acts and omissions of directing, authorizing, permitting and not preventing the CSA Aircraft to traverse Taxiway BB at a time when Defendant JFKIAT knew or should have known that Taxiway BB was obstructed by the Kuwait Aircraft and/or closed to aircraft greater than Category III and/or open only to A320 and B737 aircraft caused the Accident and the damages to Plaintiff CSA claimed herein.

151. Accordingly, Defendant JFKIAT negligently performed its duties in connection with the use of Taxiway BB, and negligently failed to hire, direct, oversee, supervise and coordinate the activities of its employees with regard to the use of Taxiway BB and other taxiways at

JFK Airport, which caused the Accident and damages to Plaintiff CSA claimed herein.

152.  Defendant JFKIAT also failed to design and/or implement the usage of hardstands in a reasonable and prudent manner for the aircraft that it and/or the Agents instructed to use the hardstands, including the placement of a B777-300 at Hardstand 63, and thereby caused the obstruction of the Kuwait Aircraft into Taxiway BB, the Accident and the damages claimed by Plaintiff CSA herein.

153.  The foregoing acts and omissions of Defendant JFKIAT proximately caused the Accident and the damages sustained by CSA.

154.  By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

## THIRTEENTH CAUSE OF ACTION – GROSS NEGLIGENCE
### (as against defendant JFKIAT)

155.  CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "154", with the same force and effect as if more fully set forth at length herein.

156.  Defendant JFKIAT failed to design and/or implement the usage of hardstands in a manner such that the aircraft that it instructed to use the hardstands, including the placement of a B777-300 at Hardstand 63, would not cause an obstruction of Taxiway BB.

157.  JFKIAT instructed the CSA Aircraft to traverse Taxiway BB at the time that JFKIAT knew Taxiway BB was closed to aircraft greater than Category III and/or open only to A320 and

B737 aircraft.

158. Defendant JFKIAT upon implementing the usage of Hardstand 63 for B777-300 aircraft whereby such aircraft would knowingly obstruct Taxiway BB was reckless and acted in complete disregard of safety for persons and property.

159. Defendant JFKIAT's implementing the usage of Hardstand 63 for B777-300 aircraft whereby such aircraft would knowingly obstruct Taxiway BB constituted gross negligence.

160. JFKIAT's instruction to the CSA Aircraft to traverse Taxiway BB and lack of warning of the Kuwait Aircraft obstruction, at the time when JFKIAT knew the Kuwait Aircraft was obstructing Taxiway BB, constituted gross negligence.

161. The foregoing acts and omissions of Defendant JFKIAT proximately caused the Accident and the damages sustained by CSA.

162. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

## FOURTEENTH CAUSE OF ACTION- NEGLIGENCE
### (as against defendant Kuwait)

163. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "162", with the same force and effect as if more fully set forth at length herein.

164. As of the time of the Accident and prior thereto, the Kuwait Aircraft was parked at Hardstand 63 in such a manner as the nosewheel was not at the stop mark designated on

the ground for B777-300 aircraft.

165.  Defendant Kuwait knew or should have known that as a result of the manner in which the Kuwait Aircraft was parked in Hardstand 63, Taxiway BB was partially obstructed by the Kuwait Aircraft.

166.  Defendant Kuwait owed a duty to other aircraft operators, including CSA, to provide adequate warning of the partial obstruction of Taxiway BB caused by the Kuwait Aircraft.

167.  Given the manner in which it was parked in Hardstand 63, Defendant Kuwait failed to advise and/or notify Plaintiff CSA and or its agents and/or other third parties in an adequate manner that Taxiway BB was obstructed by the Kuwait Aircraft.

168.  Defendant Kuwait's acts and omissions of obstructing Taxiway BB and failing to instruct, and/or notify and/or coordinate with Plaintiff CSA and/or its agents and/or other third parties concerning the manner in which its B777-300 was parked in Hardstand 63 caused the Accident and the damages to Plaintiff CSA claimed herein.

169.  Accordingly, Defendant Kuwait negligently performed its duties in connection with the use Hardstand 63 and Taxiway BB, and negligently failed to advise, notify and/or coordinate its activities and movements with regard to the use of Hardstand 63, Taxiway BB and other taxiways at JFK Airport, which caused the Accident and damages to Plaintiff CSA claimed herein.

170.  The foregoing acts and omissions of Defendant Kuwait proximately caused the Accident and the damages sustained by CSA.

171.  By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three eight hundred thousand United States Dollars) for damage to property, diminution in value of

the CSA Aircraft, and business interruption, together with interest and costs.

## FIFTEENTH CAUSE OF ACTION – NEGLIGENCE PER SE
### (as against defendant Kuwait)

172.  CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "171", with the same force and effect as if more fully set forth at length herein.

173.  Section 245(1) of the New York General Business Law prohibits the operation of an aircraft in a careless or reckless manner so as to endanger the life or property of others.

174.  Defendant Kuwait and/or its agents' placement and/or movement of the Kuwait Aircraft constituted careless and reckless operation of that aircraft that endangered the life and/or property of others.

175.  Defendant Kuwait's careless and reckless operation of its aircraft was the proximate cause of the Accident and the damages sustained by CSA.

176.  Defendant Kuwait's acts and omissions with regard to its aircraft violated Section 245(1) of the General Business Law of New York.

177.  Section 245(10)(b) of the New York Business Law requires between the hours of sunset and sunrise that all aircraft parked or moved within or in dangerous proximity to that part of any airport used for, or available to, night flight operations be clearly illuminated or lighted unless the aircraft is parked or moved in an area with obstruction lights.

178.  The Kuwait Aircraft prior to and at the time of the Accident was parked in and/or in dangerous proximity to, between the hours or sunset and sunrise, that part of JFK Airport used for and/or available to night flight operations, including but not limited to Taxiway BB.

179.  The Kuwait Aircraft prior to and at the time of the Accident was not clearly illuminated

26

and lighted.

180. The area in which the Kuwait Aircraft was parked was not illuminated by obstruction lights.

181. The tail of the Kuwait Aircraft that created an obstruction into Taxiway BB was not illuminated by obstruction lights.

182. The failure of Defendant Kuwait to illuminate and light clearly the Kuwait Aircraft was the proximate cause of the Accident and the damages sustained by CSA.

183. Defendant Kuwait's acts and omissions with regard to lack of clear illumination and lighting of the Kuwait Aircraft violated Section 245(10)(b) of the New York Business Law.

184. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, together with interest and costs.

## SIXTEENTH CAUSE OF ACTION- GROSS NEGLIGENCE
### (as against defendant Kuwait)

185. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "184", with the same force and effect as if more fully set forth at length herein.

186. As of the time of the Accident and prior thereto, the Kuwait Aircraft was parked at Hardstand 63 in such a manner as the nosewheel was not at the stop mark designated on the ground for B777-300 aircraft.

187. Given the manner in which the Kuwait Aircraft was parked, Defendant Kuwait knew that its aircraft was obstructing Taxiway BB.

188. Kuwait owed a duty to other aircraft operators, including CSA, to warn of the partial obstruction of Taxiway BB caused by the Kuwait Aircraft.

189. Defendant Kuwait failed to warn, coordinate, instruct, and/or implement appropriate measures so that its aircraft would not cause an obstruction of Taxiway BB.

190. Defendant Kuwait, in knowingly obstructing Taxiway BB, acted recklessly and with complete disregard of safety for persons and property.

191. Defendant Kuwait's knowing obstruction of Taxiway BB and its failure to rectify the manner in which its Aircraft was parked constituted gross negligence.

192. Defendant Kuwait's knowing obstruction of Taxiway BB at a time in which it knew that the likelihood of another aircraft coming into contact with the Kuwait Aircraft was greatly increased constituted gross negligence.

193. The foregoing acts and omissions of Defendant Kuwait proximately caused the Accident and the damages sustained by CSA.

194. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand eight hundred United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, together with interest and costs.

WHEREFORE, Plaintiff CSA demands judgment as follows:

a. On the First Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs, and

b. On the Second Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three

thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

c. On the Third Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

d. On the Fourth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

e. On the Fifth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

f. On the Sixth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

g.  On the Seventh Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

h.  On the Eighth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

i.  On the Ninth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

j.  On the Tenth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

k.  On the Eleventh Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value

of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

l.   On the Twelfth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

m.   On the Thirteenth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

n.   On the Fourteenth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, together with interest and costs,

o.   On the Fifteenth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, together with interest and costs,

p.   On the Sixteenth Cause of Action, damages in an amount to be determined at trial, but in amount not less than $2,423,800.00 (two million four hundred twenty-three thousand United States Dollars) for damage to the CSA Aircraft, diminution in value

of the CSA Aircraft, and business interruption, together with interest and costs,

and that Plaintiff be granted such other, further and different relief as this court may deem

just, proper and equitable.

PLAINTIFF DEMANDS TRIAL BY JURY as to all parties other than Defendant Kuwait.

Dated: May 1, 2019
New York, New York

LEADER BERKON COLAO
& SILVERSTEIN LLP

By:    /s/ Raymond L. Mariani
RAYMOND L. MARIANI
rmariani@leaderberkon.com
BRIAN K. CIFUENTES
bcifuentes@leaderberkon.com
630 Third Avenue
New York, New York 10017
P (212) 486-2400
F (212) 486-3099

# Exhibit B to Third Party Complaint by Swissport USA, Inc.

**China Southern Airlines Co., LTD. v. Swissport USA, Inc. et al.**
**U.S. District Court; Eastern District of NY; Case No. 1:18-cv-07454**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHINA SOUTHERN AIRLINES CO., LTD.<br><br>Plaintiff,<br><br>v.<br><br>THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, SWISSPORT USA, INC., DELTA AIRLINES, INC., JFK INTERNATIONAL AIR TERMINAL LLC, and KUWAIT AIRWAYS CORPORATION,<br><br>Defendants | Case No. 1:18-cv-07454 (RJD) (VMS)<br><br>**SWISSPORT USA, INC.'S ANSWER TO SECOND AMENDED COMPLAINT AND COUNTERCLAIM AGAINST CHINA SOUTHERN AIRLINES** |

SWISSPORT USA, INC. (hereinafter, "Swissport"), by its attorneys, Fitzpatrick & Hunt, Pagano, Aubert, LLP, as and for an Answer to Plaintiff's Second Amended Complaint herein, respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1.      The allegations in Paragraph 1 of the Second Amended Complaint contain conclusions of law to which no response is required.  To the extent a response is deemed required, Swissport denies the allegations in Paragraph 1 of the Second Amended Complaint, and refers all questions of law to the Court.

## JURISDICTION AND VENUE

2.      Swissport admits the allegations in Paragraph 2 of the Second Amended Complaint.

3.      Swissport admits the allegations in Paragraph 3 of the Second Amended Complaint.

4.      Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of the Second Amended Complaint.

5.      Swissport admits the allegations in Paragraph 5 of the Second Amended Complaint.

6.      Swissport admits that it is a Delaware corporation that provides, *inter alia*, ground handling services at various airports in the United States, including John F. Kennedy International Airport.  Swissport denies the remaining allegations in Paragraph 6 of the Second Amended Complaint.

7.      Swissport admits that at the times relevant to this lawsuit, it conducted business in the State of New York.  Swissport denies the remaining allegations in Paragraph 7 of the Second Amended Complaint.

8.      Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of the Second Amended Complaint.

9.      Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of the Second Amended Complaint.

10.     Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Second Amended Complaint.

11.     Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Second Amended Complaint.

12.     Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Second Amended Complaint.

13.     Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of the Second Amended Complaint.

14.     The allegations in Paragraph 14 of the Second Amended Complaint contain conclusions of law to which no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 14 of the Second Amended Complaint, and refers all questions of law to the Court.

15.     Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Second Amended Complaint.

16.     Swissport admits that at the times relevant to this lawsuit, Kuwait Airways was an airline that operated flights at John F. Kennedy International Airport.  Swissport denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16 of the Second Amended Complaint.

17.     The allegations in Paragraph 17 of the Second Amended Complaint contain conclusions of law to which no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the Second Amended Complaint, and refers all questions of law to the Court.

18.     The allegations in Paragraph 18 of the Second Amended Complaint contain conclusions of law to which no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Second Amended Complaint, and refers all questions of law to the Court.

19.     Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the Second Amended Complaint.

20.     The allegations in Paragraph 20 of the Second Amended Complaint contain conclusions of law to which no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the

3

allegations in Paragraph 20 of the Second Amended Complaint, and refers all questions of law to the Court.

21.     The allegations in Paragraph 21 of the Second Amended Complaint contain conclusions of law to which no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Second Amended Complaint, and refers all questions of law to the Court.

22.     Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Second Amended Complaint.

23.     Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Second Amended Complaint.

24.     The allegations in Paragraph 24 of the Second Amended Complaint contain conclusions of law to which no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 of the Second Amended Complaint, and refers all questions of law to the Court.

25.     The allegations in Paragraph 25 of the Second Amended Complaint contain conclusions of law to which no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 of the Second Amended Complaint, and refers all questions of law to the Court.

26.     The allegations in Paragraph 26 of the Second Amended Complaint contain conclusions of law to which no response is required.  To the extent a response is deemed required,

Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the Second Amended Complaint, and refers all questions of law to the Court.

27.     The allegations in Paragraph 27 of the Second Amended Complaint contain conclusions of law to which no response is required.  To the extent a response is deemed required, and the allegations are directed towards Swissport, Swissport admits that it conducts business in the State of New York as a provider, *inter alia*, of ground handling services at John F. Kennedy International Airport.  Swissport denies the remaining factual allegations against it in Paragraph 27 of the Second Amended Complaint.  As to the factual allegations against others, Swissport denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 27 of the Second Amended Complaint.  Swissport refers all questions of law to the Court.

28.     The allegations in Paragraph 28 of the Second Amended Complaint contain conclusions of law to which no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of the Second Amended Complaint, and refers all questions of law to the Court.

29.     The allegations in Paragraph 29 of the Second Amended Complaint contain conclusions of law to which no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Second Amended Complaint, and refers all questions of law to the Court.

## FACTS COMMON TO ALL CLAIMS

30.     The allegations in Paragraph 30 of the Second Amended Complaint contain conclusions of law to which no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of the Second Amended Complaint, and refers all questions of law to the Court.

31.     Swissport admits and avers that, on January 5, 2018, the subject China Southern Airlines Co., Ltd. ("CSA") Aircraft was being towed by a Swissport employee pursuant to the terms of the International Air Transport Association Standard Ground Handling Agreement between Swissport and CSA, under the direction of Defendants JFK IAT and/or Delta, as well as a presently unknown employee of an unknown entity contracted by CSA to act as a "brake rider" in the cockpit of the CSA aircraft who, upon information and belief, was in direct communication with JFK IAT and/or Delta.  Swissport denies the remaining allegations in Paragraph 31 of the Second Amended Complaint.

32.     Swissport admits that at the time of the incident which is the subject of this lawsuit, on January 5, 2018, the subject Kuwait Aircraft was located at Hardstand 63 at John F. Kennedy International Airport.  Swissport denies the remaining allegations in Paragraph 32 of the Second Amended Complaint.

33.     Swissport admits and avers that, on or about January 5, 2018, the Kuwait Aircraft was towed to and parked at Hardstand 63 by a Swissport employee pursuant to the terms of the International Air Transport Association Standard Ground Handling Agreement between Swissport and Kuwait, at the instruction of JFK IAT and/or Delta.  Swissport denies the remaining allegations in Paragraph 33 of the Second Amended Complaint.

34.      Swissport admits and avers that at the time of the incident which is the subject of this lawsuit, on January 5, 2018, the Kuwait Aircraft was parked on the Boeing 737 aircraft stop line at Hardstand 63 to allow access to the forward hold, pursuant to instructions received from JFK IAT and/or Delta.  Swissport denies the remaining allegations in Paragraph 34 of the Second Amended Complaint.

35.      Swissport admits and avers that at the times relevant to this lawsuit, certain Swissport employees received and were obligated to follow instructions from JFK IAT and/or Delta regarding the movement and positioning of the CSA and Kuwait Aircrafts at John F. Kennedy International Airport.  Swissport denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 35 of the Second Amended Complaint.

36.      Swissport admits that on or about January 5, 2018, JFK IAT and/or Delta instructed certain Swissport employees to park the Kuwait Aircraft at Hardstand 63.  Swissport denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 36 of the Second Amended Complaint.

37.      Swissport admits that at the time of the incident which is the subject of this lawsuit, the tail of the Kuwait Aircraft extended partially into Taxiway BB.  Swissport denies the remaining allegations in Paragraph 37 of the Second Amended Complaint.

38.      Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the Second Amended Complaint.

39.      Swissport admits and avers that as of the time of the incident which is the subject of this lawsuit, certain employees were aware that the front cargo hold of a Boeing 777-300 aircraft could not be suitably accessed with the aircraft nose wheel parked on the Boeing 777-300 stop line

at Hardstand 63 by reason of a large light post in the ground, and that Swissport communicated this to JFK IAT and/or Delta on or about January 5, 2018 (and previously) when JFK IAT and/or Delta instructed Swissport to park the Kuwait Aircraft at Hardstand 63. Swissport denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 39 of the Second Amended Complaint.

40. Swissport admits that prior to the time of the incident which is the subject of this lawsuit, on or about January 5, 2018 (and previously), it communicated to JFK IAT and/or Delta that the front cargo hold of a Boeing 777-300 aircraft could not be suitably accessed with the aircraft nose wheel parked on the Boeing 777-300 stop line at Hardstand 63 by reason of a large light post in the ground. Swissport denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 40 of the Second Amended Complaint.

41. To the extent the allegations in Paragraph 41 of the Second Amended Complaint are directed towards Swissport, Swissport denies same. Swissport avers that prior to the time of the incident which is the subject of this lawsuit, on or about January 5, 2018 (and previously), it communicated to JFK IAT and/or Delta that the front cargo hold of a Boeing 777-300 aircraft could not be suitably accessed with the aircraft nose wheel parked on the Boeing 777-300 stop line at Hardstand 63 by reason of a light post in the ground. Swissport avers that certain Swissport employees involved with the Kuwait Aircraft were informed by JFK IAT and/or Delta that Taxiway BB would be closed or limited to certain smaller types of aircraft when Swissport was instructed by JFK IAT and/or Delta to park the Kuwait Aircraft at Hardstand 63 on the Boeing 737 stop line in order to facilitate necessary access to the forward cargo hold of the Kuwait Aircraft. Swissport avers that JFK IAT and/or Delta were required and obligated to inform all other persons utilizing Taxiway BB of the closure and/or limitations on its use.

42.     Swissport admits that the front cargo hold of a Boeing 777-300 aircraft could not be suitably accessed with the aircraft nose wheel parked on the Boeing 777-300 stop line at Hardstand 63 by reason of a large light post in the ground, and that prior to the time of the incident which is the subject of this lawsuit, on or about January 5, 2018 (and previously), it communicated this to JFK IAT and/or Delta.  Swissport denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 42 of the Second Amended Complaint.

43.     To the extent the allegations in Paragraph 43 of the Second Amended Complaint are directed towards Swissport, Swissport denies same.  Swissport avers that prior to the time of the incident which is the subject of this lawsuit, on or about January 5, 2018 (and previously), it communicated to JFK IAT and/or Delta that the front cargo hold of a Boeing 777-300 aircraft could not be suitably accessed with the aircraft nose wheel parked on the Boeing 777-300 stop line at Hardstand 63 by reason of a light post in the ground.  Swissport avers that certain Swissport employees involved with the Kuwait Aircraft were informed by JFK IAT and/or Delta that Taxiway BB would be closed or limited to certain smaller types of aircraft when Swissport was instructed by JFK IAT and/or Delta to park the Kuwait Aircraft at Hardstand 63 on the Boeing 737 stop line in order to facilitate necessary access to the forward cargo hold of the Kuwait Aircraft. Swissport avers that JFK IAT and/or Delta were required and obligated to inform all other persons utilizing Taxiway BB of the closure and/or limitations on its use.

44.     To the extent the allegations in Paragraph 44 of the Second Amended Complaint are directed towards Swissport, Swissport denies same.  Swissport denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 44 of the Second Amended Complaint.

45.     Swissport admits that prior to the incident which is the subject of this lawsuit, a certain Swissport employee was instructed by JFK IAT, Delta, and/or the unknown "brake rider" contracted by CSA to tow the CSA aircraft along Taxiway BB in order to park at Hardstand 73. Swissport denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 45 of the Second Amended Complaint.

46.     Swissport admits that certain Swissport employees not involved in towing the CSA Aircraft were informed by JFK IAT and/or Delta that Taxiway BB would be closed or limited to certain smaller types of aircraft when Swissport was instructed by JFK IAT and/or Delta to park the Kuwait Aircraft at Hardstand 63 on the Boeing 737 stop line in order to facilitate necessary access to the forward cargo hold of the Kuwait Aircraft.  Swissport denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 46 of the Second Amended Complaint.

47.     Swissport admits and avers that prior to instructing Swissport to tow the CSA Aircraft on Taxiway BB, JFK IAT and/or Delta knew or should have known that other large aircraft should not utilize Taxiway BB by reason of the Kuwait Aircraft at Hardstand 63.  Swissport denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 47 of the Second Amended Complaint.

48.     To the extent the allegations in Paragraph 48 of the Second Amended Complaint are directed towards Swissport, Swissport denies same.  Swissport avers that JFK IAT and/or Delta knew or should have known that the CSA Aircraft could come in contact with the Kuwait Aircraft on Taxiway BB.  Swissport denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 48 of the Second Amended Complaint.

49.      To the extent the allegations in Paragraph 49 of the Second Amended Complaint are directed towards Swissport, Swissport denies same. Swissport avers that JFK IAT and/or Delta knew or should have known that the CSA Aircraft could come in contact with the Kuwait Aircraft on Taxiway BB. Swissport denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 49 of the Second Amended Complaint.

50.      Swissport admits that while the CSA Aircraft was towed by a certain Swissport employee pursuant to the terms of the International Air Transport Association Standard Ground Handling Agreement between Swissport and CSA, and as instructed by JFK IAT, Delta, and/or the unknown "brake rider" on Taxiway BB, the CSA Aircraft came into contact with the Kuwait Aircraft. Swissport denies the remaining allegations in Paragraph 50 of the Second Amended Complaint.

51.      Swissport admits the allegations in Paragraph 51 of the Second Amended Complaint.

52.      Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 of the Second Amended Complaint.

53.      Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 of the Second Amended Complaint.

### FIRST CAUSE OF ACTION – BREACH OF CONTRACT
### (as against defendant the Port Authority)

54.      Swissport repeats, reiterates and realleges each and every response set forth in Paragraphs 1 through 53 with the same force and effect as if more fully set forth herein.

55.      The allegations in Paragraph 55 of the Second Amended Complaint are not directed to Swissport, and no response is required. To the extent a response is deemed required, Swissport

11

denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 of the Second Amended Complaint.

56. The allegations in Paragraph 56 of the Second Amended Complaint are not directed to Swissport, and no response is required. To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 of the Second Amended Complaint.

57. The allegations in Paragraph 57 of the Second Amended Complaint are not directed to Swissport, and no response is required. To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 of the Second Amended Complaint.

58. The allegations in Paragraph 58 of the Second Amended Complaint are not directed to Swissport, and no response is required. To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 of the Second Amended Complaint.

59. The allegations in Paragraph 59 of the Second Amended Complaint are not directed to Swissport, and no response is required. To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 of the Second Amended Complaint.

60. The allegations in Paragraph 60 of the Second Amended Complaint are not directed to Swissport, and no response is required. To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 of the Second Amended Complaint.

61.     The allegations in Paragraph 61 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 of the Second Amended Complaint.

62.     The allegations in Paragraph 62 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 of the Second Amended Complaint.

63.     The allegations in Paragraph 63 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 of the Second Amended Complaint.

## SECOND CAUSE OF ACTION – NEGLIGENCE
### (as against defendant the Port Authority)

64.     Swissport repeats, reiterates and realleges each and every response set forth in Paragraphs 1 through 63 with the same force and effect as if more fully set forth herein.

65.     The allegations in Paragraph 65 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65 of the Second Amended Complaint.

66.     The allegations in Paragraph 66 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66 of the Second Amended Complaint.

67.     The allegations in Paragraph 67 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67 of the Second Amended Complaint.

68.     The allegations in Paragraph 68 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68 of the Second Amended Complaint.

69.     The allegations in Paragraph 69 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69 of the Second Amended Complaint.

70.     The allegations in Paragraph 70 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 of the Second Amended Complaint.

71.     The allegations in Paragraph 71 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71 of the Second Amended Complaint.

### THIRD CAUSE OF ACTION – GROSS NEGLIGENCE
### (as against defendant the Port Authority)

72.     Swissport repeats, reiterates and realleges each and every response set forth in Paragraphs 1 through 71 with the same force and effect as if more fully set forth herein.

73.     The allegations in Paragraph 73 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 of the Second Amended Complaint.

74.     The allegations in Paragraph 74 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 of the Second Amended Complaint.

75.     The allegations in Paragraph 75 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 of the Second Amended Complaint.

76.     The allegations in Paragraph 76 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 of the Second Amended Complaint.

77.     The allegations in Paragraph 77 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77 of the Second Amended Complaint.

## FOURTH CAUSE OF ACTION – BREACH OF CONTRACT
### (as against defendant Swissport)

78.     Swissport repeats, reiterates and realleges each and every response set forth in Paragraphs 1 through 77 with the same force and effect as if more fully set forth herein.

79.     Swissport admits that, at the time of the incident which is the subject of this lawsuit, CSA contracted with Swissport to provide specified ground handling services, including aircraft towing but not including the provision of aircraft "brake rider" services or personnel, at John F. Kennedy International Airport pursuant to the express terms and conditions of an International Air Transport Association Standard Ground Handling Agreement between Swissport and CSA. Swissport denies the remaining allegations in Paragraph 79 of the Second Amended Complaint.

80.     Swissport admits that, at the time of the incident which is the subject of this lawsuit, CSA contracted with Swissport to provide specified ground handling services, including aircraft towing but not including the provision of aircraft "brake rider" services or personnel, at John F. Kennedy International Airport pursuant to the express terms and conditions of an International Air Transport Association Standard Ground Handling Agreement between Swissport and CSA. Swissport denies the remaining allegations in Paragraph 80 of the Second Amended Complaint.

81.     Swissport admits that, at the time of the incident which is the subject of this lawsuit, CSA contracted with Swissport to provide specified ground handling services, including aircraft towing but not including the provision of aircraft "brake rider" services or personnel, at John F. Kennedy International Airport pursuant to the express terms and conditions of an International Air Transport Association Standard Ground Handling Agreement between Swissport and CSA. Swissport denies the remaining allegations in Paragraph 81 of the Second Amended Complaint.

82.     Swissport denies the allegations in Paragraph 82 of the Second Amended Complaint.

83.     Swissport denies the allegations in Paragraph 83 of the Second Amended Complaint.

84.     Swissport denies the allegations in Paragraph 84 of the Second Amended Complaint.

85.     Swissport denies the allegations in Paragraph 85 of the Second Amended Complaint.

86.     Swissport denies the allegations in Paragraph 86 of the Second Amended Complaint.

87.     Swissport denies the allegations in Paragraph 87 of the Second Amended Complaint.

### FIFTH CAUSE OF ACTION – NEGLIGENCE
### (as against defendant Swissport)

88.     Swissport repeats, reiterates and realleges each and every response set forth in Paragraphs 1 through 87 with the same force and effect as if more fully set forth herein.

89.     The allegations in Paragraph 89 of the Second Amended Complaint set forth conclusions of law to which no response is required.  To the extent a response is deemed required, Swissport denies the allegations in Paragraph 89 of the Second Amended Complaint, and refers all questions of law to the Court.

90.     Swissport denies the allegations in Paragraph 90 of the Second Amended Complaint.

91.     Swissport admits and avers that at the time of the incident which is the subject of this lawsuit, on January 5, 2018, the Kuwait Aircraft was parked on the Boeing 737 aircraft stop line at Hardstand 63 to allow access to the forward hold, pursuant to instructions received from JFK IAT and/or Delta, and after being informed by JFK IAT and/or Delta that Taxiway BB would be closed or restricted from use by other aircraft.  Swissport denies the remaining allegations in Paragraph 91 of the Second Amended Complaint.

17

92. Swissport denies the allegations in Paragraph 92 of the Second Amended Complaint.

93. Swissport denies the allegations in Paragraph 93 of the Second Amended Complaint.

94. Swissport denies the allegations in Paragraph 94 of the Second Amended Complaint.

95. Swissport denies the allegations in Paragraph 95 of the Second Amended Complaint.

**SIXTH CAUSE OF ACTION – NEGLIGENCE PER SE**
**(as against defendant Swissport)**

96. Swissport repeats, reiterates and realleges each and every response set forth in Paragraphs 1 through 95 with the same force and effect as if more fully set forth herein.

97. The allegations in Paragraph 97 of the Second Amended Complaint set forth conclusions of law to which no response is required. To the extent a response is deemed required, Swissport admits only that Section 245(1) of the New York General Business Law presently states: "No personal shall operate an aircraft in a careless or reckless manner so as to endanger the life or property of others." Swissport denies the remaining allegations in Paragraph 97 of the Second Amended Complaint, and refers all questions of law to the Court.

98. Swissport denies the allegations in Paragraph 98 of the Second Amended Complaint.

99. Swissport denies the allegations in Paragraph 99 of the Second Amended Complaint.

100. Swissport denies the allegations in Paragraph 100 of the Second Amended Complaint.

101. Swissport denies the allegations in Paragraph 101 of the Second Amended Complaint.

## SEVENTH CAUSE OF ACTION – GROSS NEGLIGENCE
## (as against defendant Swissport)

102. Swissport repeats, reiterates and realleges each and every response set forth in Paragraphs 1 through 101 with the same force and effect as if more fully set forth herein.

103. The allegations in Paragraph 103 of the Second Amended Complaint set forth conclusions of law to which no response is required. To the extent a response is deemed required, Swissport denies the allegations in Paragraph 103 of the Second Amended Complaint, and refers all questions of law to the Court.

104. Swissport admits and avers that at the time of the incident which is the subject of this lawsuit, on January 5, 2018, the Kuwait Aircraft was parked on the Boeing 737 aircraft stop line at Hardstand 63 to allow access to the forward hold, pursuant to instructions received from JFK IAT and/or Delta, and after being informed by JFK IAT and/or Delta that Taxiway BB would be closed or restricted from use by other aircraft. Swissport denies the remaining allegations in Paragraph 104 of the Second Amended Complaint.

105. Swissport denies the allegations in Paragraph 105 of the Second Amended Complaint.

106. Swissport denies the allegations in Paragraph 106 of the Second Amended Complaint.

107. Swissport denies the allegations in Paragraph 107 of the Second Amended Complaint.

108. Swissport denies the allegations in Paragraph 108 of the Second Amended Complaint.

109.    Swissport denies the allegations in Paragraph 109 of the Second Amended Complaint.

## EIGHTH CAUSE OF ACTION – BREACH OF CONTRACT
### (as against defendant Delta)

110.    Swissport repeats, reiterates and realleges each and every response set forth in Paragraphs 1 through 109 with the same force and effect as if more fully set forth herein.

111.    The allegations in Paragraph 111 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 111 of the Second Amended Complaint.

112.    The allegations in Paragraph 112 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 112 of the Second Amended Complaint.

113.    The allegations in Paragraph 113 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 113 of the Second Amended Complaint.

114.    The allegations in Paragraph 114 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 114 of the Second Amended Complaint.

115.    The allegations in Paragraph 115 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115 of the Second Amended Complaint.

116.    The allegations in Paragraph 116 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 116 of the Second Amended Complaint.

117.    The allegations in Paragraph 117 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 117 of the Second Amended Complaint.

118.    The allegations in Paragraph 118 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 118 of the Second Amended Complaint.

119.    The allegations in Paragraph 119 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 119 of the Second Amended Complaint.

120.    The allegations in Paragraph 120 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required,

Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 120 of the Second Amended Complaint.

121.   The allegations in Paragraph 121 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 121 of the Second Amended Complaint.

## NINTH CAUSE OF ACTION – NEGLIGENCE
### (as against defendant Delta)

122.   Swissport repeats, reiterates and realleges each and every response set forth in Paragraphs 1 through 121 with the same force and effect as if more fully set forth herein.

123.   The allegations in Paragraph 123 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 123 of the Second Amended Complaint.

124.   The allegations in Paragraph 124 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 124 of the Second Amended Complaint.

125.   The allegations in Paragraph 125 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 125 of the Second Amended Complaint.

126.   The allegations in Paragraph 126 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required,

Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 126 of the Second Amended Complaint.

127.   The allegations in Paragraph 127 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 127 of the Second Amended Complaint.

128.   The allegations in Paragraph 128 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 128 of the Second Amended Complaint.

**TENTH CAUSE OF ACTION – GROSS NEGLIGENCE**
**(as against defendant Delta)**

129.   Swissport repeats, reiterates and realleges each and every response set forth in Paragraphs 1 through 128 with the same force and effect as if more fully set forth herein.

130.   The allegations in Paragraph 130 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 130 of the Second Amended Complaint.

131.   The allegations in Paragraph 131 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 131 of the Second Amended Complaint.

132.   The allegations in Paragraph 132 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required,

Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 132 of the Second Amended Complaint.

133.    The allegations in Paragraph 133 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 133 of the Second Amended Complaint.

134.    The allegations in Paragraph 134 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 134 of the Second Amended Complaint.

135.    The allegations in Paragraph 135 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 135 of the Second Amended Complaint.

136.    The allegations in Paragraph 136 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 136 of the Second Amended Complaint.

### ELEVENTH CAUSE OF ACTION – BREACH OF CONTRACT
### (as against defendant JFK IAT)

137.    Swissport repeats, reiterates and realleges each and every response set forth in Paragraphs 1 through 136 with the same force and effect as if more fully set forth herein.

138.    The allegations in Paragraph 138 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required,

Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 138 of the Second Amended Complaint.

139.    The allegations in Paragraph 139 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 139 of the Second Amended Complaint.

140.    The allegations in Paragraph 140 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 140 of the Second Amended Complaint.

141.    The allegations in Paragraph 141 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 141 of the Second Amended Complaint.

142.    The allegations in Paragraph 142 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 142 of the Second Amended Complaint.

143.    The allegations in Paragraph 143 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 143 of the Second Amended Complaint.

144.     The allegations in Paragraph 144 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 144 of the Second Amended Complaint.

145.     The allegations in Paragraph 145 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 145 of the Second Amended Complaint.

146.     The allegations in Paragraph 146 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 146 of the Second Amended Complaint.

## TWELFTH CAUSE OF ACTION – NEGLIGENCE
### (as against defendant JFK IAT)

147.     Swissport repeats, reiterates and realleges each and every response set forth in Paragraphs 1 through 146 with the same force and effect as if more fully set forth herein.

148.     The allegations in Paragraph 148 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 148 of the Second Amended Complaint.

149.     The allegations in Paragraph 149 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 149 of the Second Amended Complaint.

150.    The allegations in Paragraph 150 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 150 of the Second Amended Complaint.

151.    The allegations in Paragraph 151 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 151 of the Second Amended Complaint.

152.    The allegations in Paragraph 152 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 152 of the Second Amended Complaint.

153.    The allegations in Paragraph 153 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 153 of the Second Amended Complaint.

154.    The allegations in Paragraph 154 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 154 of the Second Amended Complaint.

### THIRTEENTH CAUSE OF ACTION – GROSS NEGLIGENCE
### (as against defendant JFK IAT)

155.    Swissport repeats, reiterates and realleges each and every response set forth in Paragraphs 1 through 154 with the same force and effect as if more fully set forth herein.

27

156.    The allegations in Paragraph 156 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 156 of the Second Amended Complaint.

157.    The allegations in Paragraph 157 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 157 of the Second Amended Complaint.

158.    The allegations in Paragraph 158 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 158 of the Second Amended Complaint.

159.    The allegations in Paragraph 159 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 159 of the Second Amended Complaint.

160.    The allegations in Paragraph 160 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 160 of the Second Amended Complaint.

161.    The allegations in Paragraph 161 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required,

Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 161 of the Second Amended Complaint.

162.    The allegations in Paragraph 162 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 162 of the Second Amended Complaint.

**FOURTEENTH CAUSE OF ACTION – NEGLIGENCE**
**(as against defendant Kuwait)**

163.    Swissport repeats, reiterates and realleges each and every response set forth in Paragraphs 1 through 162 with the same force and effect as if more fully set forth herein.

164.    The allegations in Paragraph 164 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport admits the allegations in Paragraph 164 of the Second Amended Complaint.

165.    The allegations in Paragraph 165 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 165 of the Second Amended Complaint.

166.    The allegations in Paragraph 166 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 166 of the Second Amended Complaint.

167.    The allegations in Paragraph 167 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required,

Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 167 of the Second Amended Complaint.

168.    The allegations in Paragraph 168 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 168 of the Second Amended Complaint.

169.    The allegations in Paragraph 169 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 169 of the Second Amended Complaint.

170.    The allegations in Paragraph 170 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 170 of the Second Amended Complaint.

171.    The allegations in Paragraph 171 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 171 of the Second Amended Complaint.

## FIFTEENTH CAUSE OF ACTION – NEGLIGENCE PER SE
### (as against defendant Kuwait)

172.    Swissport repeats, reiterates and realleges each and every response set forth in Paragraphs 1 through 171 with the same force and effect as if more fully set forth herein.

173.    The allegations in Paragraph 173 of the Second Amended Complaint are not directed to Swissport, and no response is required.  The allegations in Paragraph 173 of the Second

Amended Complaint set forth conclusions of law to which no response is required. To the extent a response is deemed required, Swissport admits only that Section 245(1) of the New York General Business Law presently states: "No personal shall operate an aircraft in a careless or reckless manner so as to endanger the life or property of others." Swissport denies the remaining allegations in Paragraph 173 of the Second Amended Complaint, and refers all questions of law to the Court.

174.    The allegations in Paragraph 174 of the Second Amended Complaint are not directed to Swissport, and no response is required. To the extent a response is deemed required, Swissport denies the allegations in Paragraph 174 of the Second Amended Complaint.

175.    The allegations in Paragraph 175 of the Second Amended Complaint are not directed to Swissport, and no response is required. To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 175 of the Second Amended Complaint.

176.    The allegations in Paragraph 176 of the Second Amended Complaint are not directed to Swissport, and no response is required. The allegations in Paragraph 176 of the Second Amended Complaint set forth conclusions of law to which no response is required. To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 176 of the Second Amended Complaint, and refers all questions of law to the Court.

177.    The allegations in Paragraph 177 of the Second Amended Complaint are not directed to Swissport, and no response is required. The allegations in Paragraph 177 of the Second Amended Complaint set forth conclusions of law to which no response is required. To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 177 of the Second Amended Complaint, and refers all questions of law to the Court.

178.    The allegations in Paragraph 178 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 178 of the Second Amended Complaint.

179.    The allegations in Paragraph 179 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies the allegations in Paragraph 179 of the Second Amended Complaint.

180.    The allegations in Paragraph 180 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies the allegations in Paragraph 180 of the Second Amended Complaint.

181.    The allegations in Paragraph 181 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 181 of the Second Amended Complaint.

182.    The allegations in Paragraph 182 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 182 of the Second Amended Complaint.

183.    The allegations in Paragraph 183 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required,

Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 183 of the Second Amended Complaint.

184. The allegations in Paragraph 184 of the Second Amended Complaint are not directed to Swissport, and no response is required. To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 184 of the Second Amended Complaint.

## SIXTEENTH CAUSE OF ACTION – GROSS NEGLIGENCE
### (as against defendant Kuwait)

185. Swissport repeats, reiterates and realleges each and every response set forth in Paragraphs 1 through 184 with the same force and effect as if more fully set forth herein.

186. The allegations in Paragraph 186 of the Second Amended Complaint are not directed to Swissport, and no response is required. To the extent a response is deemed required, Swissport admits the allegations in Paragraph 186 of the Second Amended Complaint.

187. The allegations in Paragraph 187 of the Second Amended Complaint are not directed to Swissport, and no response is required. To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 187 of the Second Amended Complaint.

188. The allegations in Paragraph 188 of the Second Amended Complaint are not directed to Swissport, and no response is required. To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 188 of the Second Amended Complaint.

189. The allegations in Paragraph 189 of the Second Amended Complaint are not directed to Swissport, and no response is required. To the extent a response is deemed required,

Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 189 of the Second Amended Complaint.

190.    The allegations in Paragraph 190 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 190 of the Second Amended Complaint.

191.    The allegations in Paragraph 191 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 191 of the Second Amended Complaint.

192.    The allegations in Paragraph 192 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 192 of the Second Amended Complaint.

193.    The allegations in Paragraph 193 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 193 of the Second Amended Complaint.

194.    The allegations in Paragraph 194 of the Second Amended Complaint are not directed to Swissport, and no response is required.  To the extent a response is deemed required, Swissport denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 194 of the Second Amended Complaint.

195.    Swissport denies the allegations in the Paragraph of the Second Amended Complaint beginning "WHEREFORE", and each sub-part thereof.

## AFFIRMATIVE DEFENSES

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

196.    The Second Amended Complaint and each purported claim for relief fails to state a claim against Swissport upon which relief can be granted.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

197.    Plaintiff failed to join persons/entities who ought to be parties or are necessary and/or indispensable to a just adjudication of its claims.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

198.    The occurrence and damages alleged in the Second Amended Complaint were contributed to the by the fault, neglect, want of care, or other culpable acts or omissions of persons or parties other than Swissport for whose acts or omissions Swissport is not liable or responsible, and any liability or responsibility for damages sustained by Plaintiff is thereby barred or, in the alternative, should be apportioned in accordance with applicable law.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

199.    If Plaintiff was damaged as alleged in the Second Amended Complaint or otherwise as may be shown, such damages were solely and proximately caused by the independent, intervening, or superseding acts or omissions of other parties or persons for which Swissport is not liable or responsible.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

200.    To the extent that Plaintiff sustained damages as alleged in the Second Amended Complaint, Plaintiff failed to mitigate damages as required by applicable law.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

201.    Swissport's liability is limited according to Article 16 of the New York CPLR or other similar law.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

202.    If Plaintiff has received remuneration and/or compensation for some or all of its claimed economic loss, or will with reasonable certainty receive remuneration and/or compensation for said loss in the future, Swissport is entitled to have Plaintiff's award, if any, reduced by the amount of said remuneration and/or compensation pursuant to Section 4545(c) of the CPLR.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

203.    The occurrence and damages alleged in the Second Amended Complaint, if any, were caused in whole or in part by the assumption of the risk, negligence, and/or lack of due care on the part of Plaintiff.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

204.    This action is governed by the Federal Aviation Act of 1958, 49 U.S.C. § 40101 *et seq.*, which preempts state law standards governing aviation safety and flight operations.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

205.    Swissport reserves its right to assert any and all additional defenses as may be revealed by further investigation and discovery.

## COUNTERCLAIM AGAINST PLAINTIFF CHINA SOUTHERN AIRLINES CO., LTD.

Defendant and Counter-Claimant SWISSPORT USA, INC. ("Swissport"), by and through its attorneys, Fitzpatrick & Hunt, Pagano, Aubert, LLP, for its Counterclaim against Plaintiff and Counter-Defendant, CHINA SOUTHERN AIRLINES CO., LTD. ("CSA") alleges as follows:

## PARTIES

1.      Swissport is a Delaware corporation with its principal place of business located at 45025 Aviation Drive, Suite 350, Dulles, Virginia 20166.

2.      CSA is foreign corporation with its principal place of business in China.

3.      CSA is authorized to do business in the United States and the State of New York.

## JURISDICTION AND VENUE

4.      Jurisdiction in this action is based on 28 U.S.C. section 1332 because the matter is between citizens of different states, exceeds the sum of $75,000, exclusive of interests and costs, and is so related to the claims asserted in the Second Amended Complaint that it forms a part of the same case and controversy under Article III of the United States Constitution.

5.      Venue is proper in this action under 28 U.S.C. section 1391(a) and/or (b).

6.      This Court has personal jurisdiction over the Counter-Defendant because, among other things, Counter-Defendant does business in this jurisdiction, and because Counter-Defendant has committed acts that caused injury within this jurisdiction.

## NATURE OF ACTION

7.      This Counter-Claim is brought by Swissport against CSA on the basis of CSA's failure to comply with its contractual obligations, as set forth in the International Air Transport Association Standard Ground Handling Agreement between Swissport and CSA.  Specifically, by making a claim against Swissport in connection with the incident described below, CSA has violated the liability and indemnity provisions of the Agreement.

## FACTS

8.      On or about July 8, 2014, Swissport and CSA entered into the 2013 version of the International Air Transport Association ("IATA") Standard Ground Handling Agreement for

37

services to be performed at John F. Kennedy International Airport in Queens, New York ("JFK Airport") (the "Agreement"), which Agreement remained in full force and effect at the time of the incident which is the subject of this lawsuit.

9.      The Agreement consists of the Main Agreement, Annex A (Description of Services), and Annex B 1.0 (Location(s), Agreed Services and Charges).

10.     A true and accurate copy of the Agreement is attached hereto as **Exhibit A**.

11.     Under the Agreement, Swissport agreed to provide CSA with certain ground handling services, including aircraft towing services at JFK Airport.

12.     In regards to Liability and Indemnity, Article 8 of the Main Agreement provides as follows:

> **8.1**     Except as stated in Sub-Articles 8.5, the Carrier [defined to include the Carrier's employees, servants, agents and sub-contractors] shall not make any claim against the Handling Company and shall indemnify it (subject as hereinafter provided) against any legal liability for claims or suits, including costs and expenses incidental thereto, in respect of: . . . (d) damage to or loss of property owned or operated by, or on behalf of, the Carrier and any consequential loss or damage; arising from an act or omission of the Handling Company in the performance of this Agreement unless done with intent to cause damage . . . or recklessly and with the knowledge that damage . . . would probably result.

> **8.2**     The Carrier shall not make any claim against the Handling Company in respect of damage . . . to third parties caused by the operation of the Carrier's aircraft arising from any act or omission of the Handling Company in the performance of this Agreement unless done with an intent to cause damage . . . or recklessly and with knowledge that damage . . . would probably result.

> **8.5**     Notwithstanding Sub-Article 8.1(d), the Handling Company shall indemnify the Carrier against any physical loss of or damage to the Carrier's Aircraft caused by the Handling Company's negligent act or omission PROVIDED ALWAYS THAT the Handling Company's liability shall be limited to any such loss of or damage to the Carrier's Aircraft in an amount not exceeding the level of deductible under the Carrier's Hull All Risk Policy which shall not, in any event, exceed USD 1,500,000 . . .

> For the avoidance of doubt, save as expressly stated, this Sub-Article 8.5 does not affect or prejudice the generality of the provisions of Sub-Article 8.1 including the principle that the Carrier shall not make any claim against the Handling Company and shall indemnify it

38

against any liability in respect of any and all consequential loss or damage howsoever arising.

13. Under the Agreement, the "Carrier" is CSA and the "Handling Company" is Swissport.

14. On January 5, 2018, CSA was operating a 777-300ER aircraft bearing registration number B-7185 at JFK Airport (the "CSA Aircraft").

15. On January 5, 2018, the CSA Aircraft was being towed by Swissport pursuant to the terms of the Agreement, under the direction of Defendants JFK International Air Terminal LLC ("JFK IAT") and/or Delta Air Lines, Inc. ("Delta"), as well as a presently unknown employee of an unknown entity contracted by CSA to act as a "brake rider" in the cockpit of the CSA Aircraft.

16. On January 5, 2018, Swissport also provided aircraft towing services for a Kuwait Airways 777-300ER aircraft bearing registration number 9K-AOC (the "Kuwait Aircraft") pursuant to the terms of a separate IATA Standard Ground Handling Agreement between Swissport and Defendant Kuwait Airways Corporation ("Kuwait"), under the direction of Defendants JFK IAT and/or Delta.

17. On January 5, 2018, the Kuwait Aircraft landed at JFK Airport at or around 18:51 local time. Due to a lack of available gates at that time, the Kuwait Aircraft was assigned to Hardstand 63 ("HS-63") by JFK IAT and/or Delta.

18. Upon information and belief, HS-63 is not normally authorized for extended range aircraft, such as the Kuwait Aircraft. Nevertheless, JFK IAT and/or Delta instructed Swissport to park the Kuwait Aircraft on the Boeing 737 aircraft stop line at HS-63 to allow access to the forward cargo hold, leaving the tail of the Kuwait Aircraft extended partially into Taxiway BB.

39

19.     Consequently, on January 5, 2018, JFK IAT and/or Delta advised certain Swissport employees that Taxiway BB would be closed or limited to certain smaller types of aircraft.

20.     On January 5, 2018, at or around 20:00 local time, a certain Swissport employee was instructed by JFK IAT, Delta, and/or the unknown "brake rider" contracted by CSA to tow the CSA Aircraft along Taxiway BB in order to park at Hardstand 73 ("HS-73").

21.     The Swissport pushback operator who was towing the CSA Aircraft at the time of the incident which is the subject of this lawsuit was not informed, as required, by JFK IAT, Delta, or the unknown "brake rider" contracted by CSA that the tail of the Kuwait Aircraft extended partially into Taxiway BB.

22.     While the CSA Aircraft was being towed by Swissport pursuant to the terms of the Agreement, and as instructed by JFK IAT, Delta, and/or the unknown "brake rider" on Taxiway BB, the CSA Aircraft came into contact with the Kuwait Aircraft, causing unspecified damage to both aircrafts.

23.     JFK IAT, Delta and/or the unknown "brake rider" knew or should have known that the CSA Aircraft could come in contact with the Kuwait Aircraft on Taxiway BB.

24.     As a result of this incident, and notwithstanding the provisions of Article 8 of the IATA Main Agreement, Swissport has been named as a defendant in the instant action instituted by CSA to recover money damages in connection with property and related damage to the CSA Aircraft, as well to recover lost profits, fees, costs and expenses in connection with the incident and property damage.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

25.     Counter-Claimant repeats, reiterates and realleges each and every allegation contained in the paragraphs "1" through "24" with the same force and effect as though said paragraphs were more fully set forth herein at length.

26.     CSA breached its obligations under the Agreement by violating the liability and indemnity provisions of the Main Agreement.

27.     Specifically, Article 8.1 of the Main Agreement precludes CSA from making a claim against Swissport in respect of any damage to or loss of property owned or operated by CSA and any consequential loss or damage arising from any act or omission of Swissport in the performance of the Agreement *unless done with intent to cause damage or recklessly and with the knowledge that damage would probably result*.

28.     On January 5, 2018, Swissport provided aircraft towing services to CSA pursuant to the Agreement.

29.     On January 5, 2018, Swissport did not act "with intent to cause damage" or "recklessly and with the knowledge that damage would probably result."

30.     CSA breached the Agreement by making a claim against Swissport in respect of damage to or loss of the CSA Aircraft as a result of the incident that occurred at JFK Airport on January 5, 2018.

31.     By reason of the foregoing, CSA is liable to Swissport in an amount in excess of the jurisdictional limits of this Court, as well as the costs and disbursements of this action, including reasonable attorneys' fees and expenses.

## SECOND CAUSE OF ACTION
### (Express Indemnification)

32.     Counter-Claimant repeats, reiterates and realleges each and every allegation contained in the paragraphs "1" through "31" with the same force and effect as though said paragraphs were more fully set forth herein at length.

33.     Pursuant to Article 8.1 of the Main Agreement, which was in effect at the time of the incident which is the subject of this lawsuit, CSA is obligated to indemnify Swissport against any legal liability for claims or suits, including costs and expenses incidental thereto, in respect of damage to or loss of property owned or operated by CSA and any consequential loss or damage arising from an act or omission of Swissport in the performance of the Agreement *unless done with intent to cause damage or recklessly and with the knowledge that damage would probably result.*

34.     On January 5, 2018, Swissport provided aircraft towing services to CSA pursuant to the Agreement.

35.     On January 5, 2018, Swissport did not act "with intent to cause damage" or "recklessly and with the knowledge that damage would probably result."

36.     The claims asserted by CSA in the Second Amended Complaint, and the expenses Swissport has incurred and will incur to defend against them, fall within the terms of Article 8.1 of the Main Agreement.

37.     Swissport is entitled to enforce the terms of the Agreement and recover from CSA its costs and expenses, including reasonable attorneys' fees, incurred by Swissport in defending against the Second Amended Complaint and prosecuting this Counter-Claim.

## PRAYER FOR RELIEF

**WHEREFORE**, Defendant SWISSPORT USA, INC., respectfully requests the Court to:

A.  Dismiss the Second Amended Complaint against Swissport with prejudice;

B.  On Counter-Claimant's First Cause of Action, award the Counter-Claimant an amount of damages to be proven at trial;

C.  On Counter-Claimant's Second Cause of Action, award the Counter-Claimant an amount of damages to be proven at trial;

D.  Award Swissport reasonable costs and attorneys' fees incurred in defending Plaintiff's Second Amended Complaint and pursuing its Counterclaim; and

E.  Award Swissport such other and further relief as the Court shall find just and proper.

## DEMAND FOR A JURY TRIAL

Swissport demands a jury trial on all issues so triable.

Dated: September 20, 2019
New York, New York

FITZPATRICK & HUNT,
PAGANO, AUBERT, LLP

By: /s/ *Nora C. Devitt*
Nora C. Devitt
12 East 49th Street
Floor 31
New York, NY 10017
(212) 937-4000
*Attorneys for Defendant*
*Swissport USA, Inc.*

43

**TO:**

Raymond L. Mariani
LEADER & BERKON LLP
500 Mamaroneck Avenue
Suite 320
Harrison, NY 10528
914-705-4568
*Attorneys for Plaintiff*

Brian Kenneth Cifuentes
Thi Hoang Ho
LEADER & BERKON LLP
630 Third Avenue
New York, NY 10017
212-486-2400
*Attorneys for Plaintiff*

Cheryl Nancy Alterman
Brian Patrick Hodgkinson
PORT AUTHORITY OF NEW YORK & NEW JERSEY
4 WTC - 150 Greenwich Street
24th floor
New York, NY 10007
212-435-3431
Fax: 212-435-3834
Email: calterman@panynj.gov
*Attorneys for Defendant Port Authority of New York & New Jersey*

Diane Westwood Wilson
Rebecca A. Tingey
FOX ROTHSCHILD LLP
101 Park Avenue
17th Floor
New York, NY 10178
212-878-7900
*Attorneys for Defendant Port Authority of New York & New Jersey and JFK International Air Terminal LLC*

Louis R. Martinez
Michael G. Maragoudakis
MARTINEZ & RITORTO, P.C.
30 Wall Street, 8th Floor
New York, NY10005
212-248-0800
*Attorneys for Defendant Delta Air Lines, Inc.*