UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHINA SOUTHERN AIRLINES CO., LTD.,<br><br>    Plaintiff,<br><br>v.<br><br>THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, SWISSPORT USA, INC., DELTA AIR LINES, INC., JFK INTERNATIONAL AIR TERMINAL LLC, and KUWAIT AIRWAYS CORPORATION,<br><br>    Defendants. | **PLAINTIFF'S RULE 14(a)(3) CLAIMS AGAINST THIRD-PARTY DEFENDANT**<br><br>1:18-cv-07454 (RJD) (VMS) |
| SWISSPORT USA, INC,<br><br>    Defendant/Third-Party Plaintiff,<br><br>v.<br><br>BRITISH AIRWAYS PLC,<br><br>    Third-Party Defendant. | |

Pursuant to Federal Rule of Civil Procedure 14(a)(3), Plaintiff CHINA SOUTHERN AIRLINES CO., LTD. ("CSA"), herein states the following claims against Third-Party Defendant BRITISH AIRWAYS PLC ("British Airways" or "Third-Party Defendant"):

**NATURE OF THE ACTION**

1. This action was commenced by CSA on December 31, 2018 in the United States District Court for the Eastern District of New York to recover money damages in connection with a) an indemnity claim for alleged property damage to a Kuwait Airways 777-300ER aircraft

1

2. 9K-AOC ("the Kuwait Aircraft") and b) property damage and other related damages to Plaintiff CSA's 777-300ER aircraft bearing registration number B-7185 ("the CSA Aircraft"), all of which arose from an accident at John F. Kennedy International Airport in Queens, New York ("JFK Airport") on January 5, 2018 ("the Accident").

2. On May 1, 2019, CSA filed a Second Amended Complaint, naming as defendants Defendant/Third-Party Plaintiff Swissport USA, Inc. ("Defendant Swissport"), The Port Authority of New York and New Jersey ("Defendant Port Authority"), Delta Air Lines, Inc. ("Defendant Delta"), JFK International Air Terminal LLC ("Defendant JFKIAT"), and Kuwait Airways Corporation ("Defendant Kuwait").

3. On March 2, 2020, Defendant Swissport filed a Third-Party Complaint against British Airways PLC, alleging that, if Defendant Swissport is found liable to CSA for the damages asserted in this action, such liability arose from the acts and/or omissions of British Airways PLC.

## JURISDICTION AND VENUE

4. Plaintiff is a foreign corporation with its principal place of business in China.

5. Plaintiff is authorized to do business in the United States and the State of New York.

6. Third-Party Defendant British Airways PLC is a foreign corporation with its headquarters located at Waterside, UB7 GB Harmondsworth, Middlesex, England. Defendant British Airways operates and provides *inter alia* flights and ground handling services at airports worldwide, including JFK airport.

7. At all relevant times, Defendant British Airways was and has been continuously doing business in the State of New York.

8. This Court has jurisdiction over Third-Party Defendant British Airways pursuant to 28

        U.S.C. § 1332 as the citizenship of the parties is diverse and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs. The claims asserted herein also fall under the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as it relates to Plaintiff's original claim asserted in the captioned action and forms part of the same cause or controversy under Article III of the United States Constitution.

9. This Court has *in personam* jurisdiction over Third-Party Defendant British Airways pursuant to New York Civil Practice Law and Rules sections 301 and 302. British Airways conducts business in the State of New York in connection with the provision of services for common carriers, airport operations, and airport safety.

10. Venue is proper in this Court pursuant to 28 U.S.C. *§* 1391(b)(2), and 65 McKinney's Cons. Laws of NY § 7106.

## FACTS COMMON TO ALL CLAIMS

11. On January 5, 2018, the CSA Aircraft was legally authorized to be present within JFK Airport.

12. On January 5, 2018 the CSA Aircraft was being towed by Defendants Swissport and Third party defendant British Airways.

13. On January 5, 2018, in order to assist in the towing operation, an employee for Third-Party defendant British Airways was assigned to perform duties as a "brake rider" or "engineer" and was situated in the cockpit of the CSA Aircraft.

14. On January 5, 2018, defendant Kuwait's Aircraft was located at an area of JFK Airport designated by a particular number and remote from Terminal 4, namely a "hardstand"

3

bearing number 63.

15. As of the time of the Accident and prior thereto, the Kuwait Aircraft was parked at Hardstand 63 in such a manner as the nosewheel was not at the stop mark designated on the ground for B777-300 aircraft.

16. As of the time of the Accident and prior thereto, agents of defendant The Port Authority, including but not limited to defendant JFKIAT and defendant Delta ("the Agents"), were under its employ, direction, control, supervision and contractual obligation with regard to the instructions communicated to aircraft concerning movement at JFK Airport, including the CSA Aircraft and Kuwait Aircraft.

17. As of the time of the Accident and prior thereto, the Agents instructed that the Kuwait Aircraft park at Hardstand 63.

18. As of the time of the Accident, the Kuwait Aircraft was partially obstructing Taxiway BB.

19. Prior to the Accident, the Agents instructed that defendants Swissport and British Airways tow the CSA Aircraft through Taxiway BB in order to park at Hardstand 73.

20. Prior to instructing defendants Swissport and British Airways to move the CSA Aircraft through Taxiway BB, one or more of the Agents closed or attempted to close Taxiway BB to aircraft in excess of Category III and limited Taxiway BB to only A320 and B737 aircraft.

21. While the CSA Aircraft was being towed by Swissport and British Airways on Taxiway BB, the CSA Aircraft came into contact with the Kuwait Aircraft.

22. The contact between the CSA Aircraft and the Kuwait Aircraft caused damage to the CSA Aircraft.

23. Kuwait Airways has alleged in a counterclaim against CSA that the contact between the

Kuwait Aircraft and CSA Aircraft caused damage to the Kuwait Aircraft in an amount in excess of $12,000,000.00 (twelve million United States dollars).

<strong>FIRST CLAIM - BREACH OF CONTRACT<br>(as against Third-Party Defendant British Airways)</strong>

24. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs number "l" through "23" with the same force and effect as if more fully set forth herein.

25. At all times relevant, a written agreement has been and continues to be in full force and effect as between Plaintiff CSA and Defendant British Airways ("the British Airways Agreement") with regard to, among other things, ground handling services, including "brake riding" services, provided by British Airways at JFK Airport.

26. Pursuant to the British Airways Agreement, British Airways agreed to provide safe and secure ground handling services, coordinate with all third-parties at JFK airport, and to ensure that CSA's service standards would be met.

27. By virtue of the British Airways Agreement, Defendant British Airways was obligated to ensure, among other things, safe passage, ingress and egress through Taxiway BB and to Hardstand 73.

28. Defendant British Airways failed to secure the safe passage, ingress and egress through Taxiway BB and to Hardstand 73.

29. Defendant British Airways' failure to secure the safe passage, ingress and egress of the CSA Aircraft through Taxiway BB was the cause of the Accident and damages sustained by Plaintiff.

30. Defendant British Airways' failure to secure the safe passage, ingress and egress of the CSA Aircraft through Taxiway BB was a material breach of the British Airways'

Agreement.

31. The breach of the British Airways' Agreement by Defendant British Airways was the cause in fact and legal cause of the Accident and damages sustained by Plaintiff.

32. CSA performed all conditions precedent, covenants, and promises in accordance with the terms and conditions of the British Airways Agreement.

33. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,301,337.00 (two million three hundred and one thousand three hundred and thirty seven United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to CSA's alleged liability to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

## SECOND CLAIM - NEGLIGENCE
### (as against Third-Party Defendant British Airways)

34. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "33", with the same force and effect as if more fully set forth at length herein.

35. Defendant British Airways owed a duty to Plaintiff CSA to perform ground handling services, including the performance of "brake riding" services, so that the CSA Aircraft would not come into contact with the Kuwait Aircraft.

36. If the allegations in the Swissport Third party Complaint are proven at trial to be true, then Defendant British Airways failed to perform ground handling services, including "brake riding" services, by not stopping the CSA Aircraft and by permitting the CSA Aircraft to come into contact with the Kuwait Aircraft.

37. If the allegations in the Swissport Third party Complaint are proven at trial to be true, then

6

|     | Third Party Defendant British Airways' acts and omissions of not preventing the CSA Aircraft from coming into contact with the Kuwait Aircraft or notifying anyone of the hazard caused the Accident and damages to Plaintiff CSA. |
| --- | --- |
| 38. | If the allegations in the Swissport Third party Complaint are proven at trial to be true, then Third Party Defendant British Airways was negligent by its acts and omissions in connection with its brake riding services and its failure to secure the safe and secure ground handling of the CSA Aircraft through Taxiway BB and other taxiways at JFK Airport, all of which caused the Accident and damages to Plaintiff CSA. |
| 39. | If the allegations in the Swissport Third party Complaint are proven at trial to be true, then the foregoing acts and omissions of Third party Defendant British Airways proximately caused the Accident and the damages sustained by CSA. |
| 40. | By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,301,337.00 (two million three hundred and one thousand three hundred and thirty seven United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs. |

**THIRD CLAIM – NEGLIGENCE PER SE**
**(as against Third-Party Defendant British Airways)**

|     |     |
| --- | --- |
| 41. | CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "40", with the same force and effect as if more fully set forth at length herein. |
| 42. | Section 245(1) of the New York General Business Law prohibits the operation of an aircraft in a careless or reckless manner so as to endanger the life or property of others. |

43. If the allegations in the Swissport Third party Complaint are proven at trial to be true, then British Airways' acts and/or omissions of failing to stop the CSA Aircraft and/or notify anyone of the hazard constituted careless and reckless operation of the CSA Aircraft that endangered the life and/or property of others.

44. If the allegations in the Swissport Third party Complaint are proven at trial to be true, then British Airways' careless and reckless operation of the CSA Aircraft was the proximate cause of the Accident and the damages sustained by CSA.

45. If the allegations in the Swissport Third party Complaint are proven at trial to be true, then British Airways' acts and omissions with regard to the CSA Aircraft violated Section 245(1) of the General Business Law of New York.

46. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,301,337.00 (two million three hundred and one thousand three hundred and thirty seven United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

**FOURTH CLAIM – GROSS NEGLIGENCE**
**(as against Third-Party Defendant British Airways)**

47. CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "46", with the same force and effect as if more fully set forth at length herein.

48. Defendant British Airways owed a duty to Plaintiff CSA to provide safe and secure ground handling of the CSA Aircraft in light of the fact that Taxiway BB was obstructed by the Kuwait Aircraft and was open for only aircraft of Category III or less and/or open only to

8

A320 and B737 aircraft.

49. If the allegations in the Swissport Third party Complaint are proven at trial to be true, then Defendant British Airways, while knowing that Taxiway BB was obstructed by the Kuwait Aircraft, was reckless and acted in complete disregard of safety for persons and property by failing to stop the CSA Aircraft from proceeding down Taxiway BB and/or failing to notify anyone of the known obstruction.

50. If the allegations in the Swissport Third party Complaint are proven at trial to be true, then Defendant British Airways' failure to stop the CSA Aircraft from proceeding down Taxiway BB while knowing that it was obstructed by the Kuwait Aircraft constituted gross negligence.

51. If the allegations in the Swissport Third party Complaint are proven at trial to be true, then British Airways' knowing and reckless failure to stop the CSA Aircraft and to adequately warn CSA and/or the persons towing the CSA Aircraft constituted gross negligence.

52. If the allegations in the Swissport Third party Complaint are proven at trial to be true, then The foregoing acts and omissions of Defendant British Airways proximately caused the Accident and the damages sustained by CSA.

53. By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,301,337.00 (two million three hundred and one thousand three hundred and thirty seven United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

WHEREFORE, pursuant to Federal Rule of Civil Procedure 14(a)(3), Plaintiff CSA

demands judgment as follows:

a. On the First Claim, damages in an amount to be determined at trial, but in amount not less than $2,301,337.00 (two million three hundred and one thousand three hundred and thirty seven United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs, and

b. On the Second Claim, damages in an amount to be determined at trial, but in amount not less than $2,301,337.00 (two million three hundred and one thousand three hundred and thirty seven United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

c. On the Third Claim, damages in an amount to be determined at trial, but in amount not less than $2,301,337.00 (two million three hundred and one thousand three hundred and thirty seven United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of any payment for damage alleged to the Kuwait Aircraft, together with interest and costs,

d. On the Fourth Claim, damages in an amount to be determined at trial, but in amount not less than $2,301,337.00 (two million three hundred and one thousand three hundred and thirty seven United States Dollars) for damage to the CSA Aircraft, diminution in value of the CSA Aircraft, and business interruption, in addition to reimbursement of

any payment for damage alleged to the Kuwait Aircraft, together with interest and costs.

PLAINTIFF DEMANDS TRIAL BY JURY as against Third-Party Defendant.

Dated: June 19, 2020
      New York, New York

                           LEADER BERKON COLAO
                          & SILVERSTEIN LLP

           By:   /s/ *Raymond Mariani*
                   RAYMOND L. MARIANI
                   rmariani@leaderberkon.com
                   BRIAN K. CIFUENTES
                   bcifuentes@leaderberkon.com
                   630 Third Avenue
                   New York, New York 10017
                   P (212) 486-2400
                   F (212) 486-3099

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on this day caused the foregoing CHINA SOUTHERN AIRLINES CO., LTD.'S RULE 14(a)(3) CLAIMS AGAINST THIRD-PARTY DEFENDANT to be electronically filed using the CM/ECF system, which will send notification of such filing to all counsel registered to receive such notice.

This 19th day of June, 2020.

By:  /s/ *Brian Cifuentes*
      **BRIAN K. CIFUENTES**