**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHINA SOUTHERN AIRLINES CO., LTD, | |
| Plaintiff, | |
| v. | Case No: 1:18-CV-07454 (RJD)(VMS) |
| THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, SWISSPORT USA, INC., DELTA AIRLINES, INC., JFK INTERNATIONAL AIR TERMINAL LLC, AND KUWAIT AIRWAYS CORPORATION, | |
| Defendants. | |
| SWISSPORT USA, INC., | |
| Defendant/Third-Party Plaintiff, | |
| v. | |
| BRITISH AIRWAYS PLC, | |
| Third-Party Defendant. | |

**THIRD-PARTY DEFENDANT BRITISH AIRWAYS PLC'S**
**ANSWERS AND AFFIRMATIVE DEFENSES TO PLAINTIFF**
**CHINA SOUTHERN AIRLINES CO. LTD.'S RULE 14(a)(3) CLAIMS**

Defendant British Airways PLC, herein Answers the Plaintiff China Southern Airlines Co.

Ltd.'s ("CSA") Rule 14(A)(3) Claims against Third-Party Defendant British Airways PLC

("British Airways" or "Third-Party Defendant"):

**AS TO THE NATURE OF THE ACTION**

1.      This action was commenced by CSA on December 31, 2018 in the United States

District Court for the Eastern District of New York to recover money damages in connection with

a) an indemnity claim for alleged property damage to a Kuwait Airways 777-300ER aircraft 9K-AOC ("the Kuwait Aircraft") and b) property damage and other related damages to Plaintiff CSA's 777-300ER aircraft bearing registration number B-7185 ("the CSA Aircraft"), all of which arose from an accident at John F. Kennedy International Airport in Queens, New York ("JFK Airport") on January 5, 2018 ("the Accident").

**ANSWER:**   British Airways admits only the allegations contained in paragraph 1.

2.   On May 1, 2019, CSA filed a Second Amended Complaint, naming as defendants Defendant/Third-Party Plaintiff Swissport USA, Inc. ("Defendant Swissport"), The Port Authority of New York and New Jersey ("Defendant Port Authority"), Delta Air Lines, Inc. ("Defendant Delta"), JFK International Air Terminal LLC ("Defendant JFKIAT"), and Kuwait Airways Corporation ("Defendant Kuwait").

**ANSWER:**   British Airways admits only the allegations contained in Paragraph 2.

3.   On March 2, 2020, Defendant Swissport filed a Third-Party Complaint against British Airways PLC, alleging that, if Defendant Swissport is found liable to CSA for the damages asserted in this action, such liability arose from the acts and/or omissions of British Airways PLC.

**ANSWER:**   British Airways admits only the allegations contained in Paragraph 3.

### AS TO THE JURISDICTION AND VENUE

4.   Plaintiff is a foreign corporation with its principal place of business in China.

**ANSWER:**   British Airways denies knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4 and therefore denies the allegations.

5.   Plaintiff is authorized to do business in the United States and the State of New York.

**ANSWER:**   British Airways denies knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5 and therefore denies the allegations.

2

6.     Third-Party Defendant British Airways PLC  is a foreign corporation with its headquarters located at Waterside, UB7 GB Harmondsworth, Middlesex, England. Defendant British Airways operates and provides *inter alia* flights and ground handling services at airports worldwide, including JFK airport.

**ANSWER:**     British Airways admits only the allegations contained in Paragraph 6.

7.     At all relevant times, Defendant British Airways was and has been continuously doing business in the State of New York.

**ANSWER:**     British Airways admits only the allegations contained in Paragraph 7.

8.     This Court has jurisdiction over Third-Party Defendant British Airways pursuant to 28 U.S.C. § 1332 as the citizenship of the parties is diverse and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs. The claims asserted herein also fall under the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as it relates to Plaintiff's original claim asserted in the captioned action and forms part of the same cause or controversy under Article III of the United States Constitution.

**ANSWER:**     British Airways denies knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 8 and therefore denies the allegations.

9.     This Court has *in personam* jurisdiction over Third-Party Defendant British Airways pursuant to New York Civil Practice Law and Rules sections 301 and 302. British Airways conducts business in the State of New York in connection with the provision of services for common carriers, airport operations, and airport safety.

**ANSWER:**     British Airways denies knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4 and therefore denies the allegations.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), and 65 McKinney's Cons. Laws of NY § 7106.

**ANSWER:**     British Airways denies knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10 and therefore denies the allegations.

## AS TO THE ALLEGED FACTS COMMON TO ALL CLAIMS

11.     On January 5, 2018, the CSA Aircraft was legally authorized to be present within JFK Airport.

**ANSWER:**     British Airways denies knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11 and therefore denies the allegations.

12.     On January 5, 2018 the CSA Aircraft was being towed by Defendants Swissport and Third-Party Defendant British Airways.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 12, except admits only that the CSA Aircraft was being towed by Swissport on the subject date.

13.     On January 5, 2018, in order to assist in the towing operation, an employee for Third-Party defendant British Airways was assigned to perform duties as a "brake rider" or "engineer" and was situated in the cockpit of the CSA Aircraft.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 13, except admits only that it provided an authorized cockpit brake operator in connection with the towing operation in accordance with its contract with CSA.

14.     On January 5, 2018, defendant Kuwait's Aircraft was located at an area of JFK Airport designated by a particular number and remote from Terminal 4, namely a "hardstand" bearing number 63.

**ANSWER:**     British Airways denies knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 14 and therefore denies the allegations.

15.     As of the time of the Accident and prior thereto, the Kuwait Aircraft was parked at Hardstand 63 in such a manner as the nosewheel was not at the stop mark designated on the ground for B777-300 aircraft.

**ANSWER:**     British Airways denies knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15 and therefore denies the allegations.

16.     As of the time of the Accident and prior thereto, agents of defendant The Port Authority, including but not limited to defendant JFKIAT and defendant Delta ("the Agents"), were under its employ, direction, control, supervision and contractual obligation with regard to the instructions communicated to aircraft concerning movement at JFK Airport, including the CSA Aircraft and Kuwait Aircraft.

**ANSWER:**     British Airways denies knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16 and therefore denies the allegations.

17.     As of the time of the Accident and prior thereto, the Agents instructed that the Kuwait Aircraft park at Hardstand 63.

**ANSWER:**     British Airways denies knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17 and therefore denies the allegations.

18.     As of the time of the Accident, the Kuwait Aircraft was partially obstructing Taxiway BB.

**ANSWER:**     British Airways denies knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18 and therefore denies the allegations. British Airways admits only that British Airways provided an authorized cockpit brake operator in

accordance with its contract with CSA, that this was its only connection to the towing operation, and that the aircraft was not under the direction of British Airways at the time of the incident.

19.    Prior to the Accident, the Agents instructed that defendants Swissport and British Airways tow the CSA Aircraft through Taxiway BB in order to park at Hardstand 73.

**ANSWER:**    British Airways denies the allegations contained in Paragraph 19 and admits only that the Agents instructed Swissport to tow the CSA Aircraft through Taxiway BB in order to park at Hardstand 73, that British Airways' only connection to the towing operation was that it provided an authorized cockpit brake operator in connection with the towing operation in accordance with its contract with CSA, and that the aircraft was not under the direction of British Airways at the time of the incident.

20.    Prior to instructing defendants Swissport and British Airways to move the CSA Aircraft through Taxiway BB, one or more of the Agents closed or attempted to close Taxiway BB to aircraft in excess of Category III and limited Taxiway BB to only A320 and B737 aircraft.

**ANSWER:**    British Airways denies knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 20 insofar as those allegations pertain to British Airways and therefore denies the allegations. British Airways admits only that the Agents instructed Swissport to tow the CSA Aircraft through Taxiway BB in order to park at Hardstand 73, that British Airways' only connection to the towing operation was that it provided an authorized cockpit brake operator in connection with the towing operation in accordance with its contract with CSA, and that the aircraft was not under the direction of British Airways at the time of the incident.

21.    While the CSA Aircraft was being towed by Swissport and British Airways on Taxiway BB, the CSA Aircraft came into contact with the Kuwait Aircraft.

6

**ANSWER:**    British Airways denies the allegations set forth in Paragraph 21, except admits only that the CSA Aircraft was being towed by Swissport under the direct operational control and duty of Swissport to maneuver the aircraft in such manner as to avoid other aircraft such as the Kuwait Aircraft, that British Airways provided an authorized cockpit brake operator in accordance with its contract with CSA, that this was its only connection to the towing operation, that the aircraft was not under the direction of British Airways at the time of the incident, and that the CSA Aircraft came into contact with the Kuwait Aircraft.

22.    The contact between the CSA Aircraft and the Kuwait Aircraft caused damage to the CSA Aircraft.

**ANSWER:**    British Airways denies knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 22 and therefore denies the allegations.

23.    Kuwait Airways has alleged in a counterclaim against CSA that the contact between the Kuwait Aircraft and CSA Aircraft caused damage to the Kuwait Aircraft in an amount in excess of $12,000,000.00 (twelve million United States dollars).

**ANSWER:**    British Airways denies knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 23, except admits that Kuwait Airways filed a counterclaim against CSA, the contents of which speaks for itself.

### AS TO THE ALLEGED FIRST CLAIM – BREACH OF CONTRACT
### (as against Third-Party Defendant British Airways)

24.    CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs number "l" through "23" with the same force and effect as if more fully set forth herein.

**ANSWER:**    British Airways incorporates and restates its answers to paragraphs 1 through 23 as though fully set-forth herein.

7

25.     At all times relevant, a written agreement has been and continues to be in full force and effect as between Plaintiff CSA and Defendant British Airways ("the British Airways Agreement") with regard to, among other things, ground handling services, including "brake riding" services, provided by British Airways at JFK Airport.

**ANSWER:**     British Airways admits only the allegations contained in Paragraph 25, and respectfully refers the Court to the Agreement for the exact terms and language.

26.     Pursuant to the British Airways Agreement, British Airways agreed to provide safe and secure ground handling services, coordinate with all third-parties at JFK airport, and to ensure that CSA's service standards would be met.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 26 and respectfully refers the Court to the Agreement for the exact terms and language.

27.     By virtue of the British Airways Agreement, Defendant British Airways was obligated to ensure, among other things, safe passage, ingress and egress through Taxiway BB and to Hardstand 73.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 27 and respectfully refers the Court to the Agreement for the exact terms and language.

28.     Defendant British Airways failed to secure the safe passage, ingress and egress through Taxiway BB and to Hardstand 73.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 28.

29.     Defendant British Airways' failure to secure the safe passage, ingress and egress of the CSA Aircraft through Taxiway BB was the cause of the Accident and damages sustained by Plaintiff.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 29.

30.     Defendant British Airways' failure to secure the safe passage, ingress and egress of the CSA Aircraft through Taxiway BB was a material breach of the British Airways' Agreement.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 30.

31.     The breach of the British Airways' Agreement by Defendant British Airways was the cause in fact and legal cause of the Accident and damages sustained by Plaintiff.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 31.

32.     CSA performed all conditions precedent, covenants, and promises in accordance with the terms and conditions of the British Airways Agreement.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 32.

33.     By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,301,337.00 (two million three hundred and one thousand three hundred and thirty seven United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to CSA's alleged liability to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 33.

### AS TO THE ALLEGED SECOND CLAIM – NEGLIGENCE
### (as against Third-Party Defendant British Airways)

34.     CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "33", with the same force and effect as if more fully set forth at length herein.

**ANSWER:**     British Airways incorporates and restates its answers to paragraphs 1 through 33 as though fully set-forth herein.

9

35.     Defendant British Airways owed a duty to Plaintiff CSA to perform ground handling services, including the performance of "brake riding" services, so that the CSA Aircraft would not come into contact with the Kuwait Aircraft.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 35.

36.     If the allegations in the Swissport Third party Complaint are proven at trial to be true, then Defendant British Airways failed to perform ground handling services, including "brake riding" services, by not stopping the CSA Aircraft and by permitting the CSA Aircraft to come into contact with the Kuwait Aircraft.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 36.

37.     If the allegations in the Swissport Third party Complaint are proven at trial to be true, then Third Party Defendant British Airways' acts and omissions of not preventing the CSA Aircraft from coming into contact with the Kuwait Aircraft or notifying anyone of the hazard caused the Accident and damages to Plaintiff CSA.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 37.

38.     If the allegations in the Swissport Third party Complaint are proven at trial to be true, then Third Party Defendant British Airways was negligent by its acts and omissions in connection with its brake riding services and its failure to secure the safe and secure ground handling of the CSA Aircraft through Taxiway BB and other taxiways at JFK Airport, all of which caused the Accident and damages to Plaintiff CSA.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 38.

39.     If the allegations in the Swissport Third party Complaint are proven at trial to be true, then the foregoing acts and omissions of Third party Defendant British Airways proximately caused the Accident and the damages sustained by  CSA.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 39.

40.     By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,301,337.00 (two million three hundred and one thousand three hundred and thirty seven United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 40.

### AS TO THE ALLEGED THIRD CLAIM – NEGLIGENCE PER SE
### (as against Third-Party Defendant British Airways)

41.     CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "40", with the same force and effect as if more fully set forth at length herein.

**ANSWER:**     British Airways incorporates and restates its answers to paragraphs 1 through 40 as though fully set-forth herein.

42.     Section 245(1) of the New York General Business Law prohibits the operation of an aircraft in a careless or reckless manner so as to endanger the life or property of others.

**ANSWER:**     British Airways denies knowledge and information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 42 and therefore denies the allegations.

43.     If the allegations in the Swissport Third party Complaint are proven at trial to be true, then British Airways' acts and/or omissions of failing to stop the CSA Aircraft and/or notify anyone of the hazard constituted careless and reckless operation of the CSA Aircraft that endangered the life and/or property of others.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 43.

11

44.     If the allegations in the Swissport Third party Complaint are proven at trial to be true, then British Airways' careless and reckless operation of the CSA Aircraft was the proximate cause of the Accident and the damages sustained by CSA.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 44.

45.     If the allegations in the Swissport Third party Complaint are proven at trial to be true, then British Airways' acts and omissions with regard to the CSA Aircraft violated Section 245(1) of the General Business Law of New York.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 45.

46.     By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,301,337.00 (two million three hundred and one thousand three hundred and thirty seven United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 46.

### AS TO THE ALLEGED FOURTH CLAIM – GROSS NEGLIGENCE
### (as against Third-Party Defendant British Airways)

47.     CSA repeats, reiterates, and realleges each and every allegation set forth in foregoing paragraphs numbered "1" through "46", with the same force and effect as if more fully set forth at length herein.

**ANSWER:**     British Airways incorporates and restates its answers to paragraphs 1 through 47 as though fully set-forth herein.

48.     Defendant British Airways owed a duty to Plaintiff CSA to provide safe and secure ground handling of the CSA Aircraft in light of the fact that Taxiway BB was obstructed by the

Kuwait Aircraft and was open for only aircraft of Category III or less and/or open only to A320 and B737 aircraft.

**ANSWER:**    British Airways denies the allegations contained in Paragraph 48.

49.    If the allegations in the Swissport Third party Complaint are proven at trial to be true, then Defendant British Airways, while knowing that Taxiway BB was obstructed by the Kuwait Aircraft, was reckless and acted in complete disregard of safety for persons and property by failing to stop the CSA Aircraft from proceeding down Taxiway BB and/or failing to notify anyone of the known obstruction.

**ANSWER:**    British Airways denies the allegations contained in Paragraph 49.

50.    If the allegations in the Swissport Third party Complaint are proven at trial to be true, then Defendant British Airways' failure to stop the CSA Aircraft from proceeding down Taxiway BB while knowing that it was obstructed by the Kuwait Aircraft constituted gross negligence.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 50.

51.    If the allegations in the Swissport Third party Complaint are proven at trial to be true, then British Airways' knowing and reckless failure to stop the CSA Aircraft and to adequately warn CSA and/or the persons towing the CSA Aircraft constituted gross negligence.

**ANSWER:**    British Airways denies the allegations contained in Paragraph 51.

52.    If the allegations in the Swissport Third party Complaint are proven at trial to be true, then the foregoing acts and omissions of Defendant British Airways proximately caused the Accident and the damages sustained by CSA.

**ANSWER:**    British Airways denies the allegations contained in Paragraph 52.

13

53.     By reason of the foregoing, CSA has been damaged in an amount to be determined at trial, but in amount not less than $2,301,337.00 (two million three hundred and one thousand three hundred and thirty seven United States Dollars) for damage to property, diminution in value of the CSA Aircraft, and business interruption, in addition to the alleged liability of Plaintiff CSA to Kuwait Airways for the damage alleged to the Kuwait Aircraft, together with interest and costs.

**ANSWER:**     British Airways denies the allegations contained in Paragraph 53.

WHEREFORE, Defendant British Airlines PLC respectfully requests that the Court enter judgment against CSA and in favor of British Airlines PLC, deny the relief requested by CSA and award British Airlines PLC such other and further relief as it deems just and proper.

## AFFIRMATIVE DEFENSES

Defendant, British Airlines PLC, pleading in the alternative, and without prejudice to its denials asserted in its Answer to Plaintiff China Southern Airlines Co. Ltd.'s ("CSA") Rule 14(A)(3) Claims, asserts and alleges the following separate and affirmative defenses to China Southern's Rule 14(a)(3) Claims. By listing any matter as a defense, British Airlines PLC does not assume the burden of proving any matter upon which China Southern, or any other party, bears the burden of proof under the applicable law. In addition, British Airlines PLC specifically reserves the right to restate, amend, or delete any defense, and to assert any additional defenses as additional facts become known.

## FIRST SEPARATE AND AFFIRMATIVE DEFENSE

China Southern's Rule 14(a)(3) Claims fail to state a claim against British Airways upon which relief can be granted.

## SECOND SEPARATE AND AFFIRMATIVE DEFENSE

China Southern failed to join persons or entities to this action that are necessary and/or indispensable to a fair and just adjudication of its claims.

## THIRD SEPARATE AND AFFIRMATIVE DEFENSE

All damages that China Southern alleges were sustained to the CSA Aircraft and the KAC Aircraft were sustained by reason of the negligence or other culpable conduct of persons or entities over whom British Airways exercised no control or supervision, and not by reason of any culpable conduct of British Airways.

## FOURTH SEPARATE AND AFFIRMATIVE DEFENSE

British Airways is not liable to China Southern for any damages China Southern alleges or liability it may sustain as a result of the events alleged in China Southern's Rule 14(a)(3) Claims, as the Accident was solely and proximately caused by the independent, intervening, or superseding acts or omissions of parties other than British Airways.

## FIFTH SEPARATE AND AFFIRMATIVE DEFENSE

China Southern has failed to properly and/or fully mitigate its alleged damages, as required by applicable law.

## SIXTH SEPARATE AND AFFIRMATIVE DEFENSE

The events alleged in China Southern's Rule 14(a)(3) Claims were caused in whole, or in part, by the assumption of the risk, negligence, and/or lack of due care on the part of China Southern.

## SEVENTH SEPARATE AND AFFIRMATIVE DEFENSE

China Southern's recovery from British Airways as a result of the Rule 14(a)(3) Claims, if any, shall be reduced and/or subject to equitable apportionment under CPLR Article 16.

## EIGHTH SEPARATE AND AFFIRMATIVE DEFENSE

China Southern's recovery from British Airways as a result of China Southern's Rule 14(a)(3) Claims, if any, shall be reduced by the amount of any collateral payments received, in accordance with CPLR 4545.

## NINTH SEPARATE AND AFFIRMATIVE DEFENSE

This action is governed by the Federal Aviation Act of 1958, 49 U.S.C. § 40101 et seq., applicable ICAO Regulations governing British Airways aviation operations, and/or other federal law or regulations governing aviation, which preempt state law standards governing aviation safety and flight operations.

## TENTH SEPARATE AND AFFIRMATIVE DEFENSE

British Airways is not liable to China Southern because British Airways did not create a defective or dangerous condition and did not have any actual or constructive notice of the existence of any dangerous or defective condition at JFK prior to the events alleged in China Southern's Rule 14(a)(3) Claims or its Second Amended Complaint. Furthermore, to the extent any such notice could be imputed to British Airways, British Airways did not have a reasonable amount of time to correct any such alleged condition or warn others.

## ELEVENTH SEPARATE AND AFFIRMATIVE DEFENSE

China Southern had an independent duty to warn and failed to warn British Airways of the defective or dangerous condition alleged in its Rule 14(a)(3) Claims despite that it knew, or should have known, of the alleged condition.

## TWELFTH SEPARATE AND AFFIRMATIVE DEFENSE

China Southern's Rule 14(a)(3) Claims against British Airways are barred in whole, or in part, by the principles of the economic loss doctrine.

16

## THIRTEENTH SEPARATE AND AFFIRMATIVE DEFENSE

As China Southern alleged in its Rule 14(a)(3) Claims, at all times relevant, a written agreement has been and continues to be in full force and effect as between China Southern and British Airways (the "British Airways Agreement") with regard to, among other things, the provision by British Airways of an "authorized cockpit brake operator in connection with towing" at JFK Airport. Thus, the parties' relationship is governed by this agreement and thus, China Southern's Rule 14(a)(3) non-contractual based tort and/or statutory claims against British Airways are barred in whole, or in part, by the agreement.

## FOURTEENTH SEPARATE AND AFFIRMATIVE DEFENSE

China Southern's Rule 14(a)(3) Claims are barred because China Southern failed to exhaust the dispute resolution procedures contained in Article 9 of the British Airways Agreement.

## FIFTEENTH SEPARATE AND AFFIRMATIVE DEFENSE

China Southern's Rule 14(a)(3) Claims are barred by the Federal Arbitration Act and the valid and enforceable arbitration agreement contained in Article 9 of the British Airways Agreement.

## SIXTEENTH SEPARATE AND AFFIRMATIVE DEFENSE

China Southern's Rule 14(a)(3) Claims are barred in whole, or in part, by the limits of liability set forth in the British Airways Agreement, including but not limited to the limits of liability stated in Sub-Article 8.5.

## SEVENTEENTH SEPARATE AND AFFIRMATIVE DEFENSE

British Airways hereby asserts all contractual defenses available to it under the British Airways Agreement.

## RESERVATION

British Airways PLC reserves the right to assert against Plaintiff China Southern, or any other subsequent defendants or third parties any other claims or affirmative defenses that may develop during the course of the investigation, discovery, and litigation of this action.

## THIRD-PARTY DEFENDANT BRITISH AIRWAYS PLC'S COUNTERCLAIM TO PLAINTIFF CHINA SOUTHERN AIRLINES CO. LTD.'S RULE 14(A)(3) CLAIMS

NOW COMES Third-Party Defendant/Counter-Plaintiff, BRITISH AIRWAYS PLC (hereinafter "British Airways") by and through its counsel, KMA ZUCKERT LLC, for its Counterclaim to Plaintiff/Counter-Defendant China Southern Airlines Co. Ltd.'s ("China Southern") Rule 14(a)(3) Claims states as follows:

## JURISDICTION AND VENUE

1.  British Airways is a foreign corporation with its principal place of business in Harmondsworth, England.

2.  China Southern is a foreign corporation with its principal place of business in China.

3.  At all relevant times, China Southern was and has been continuously conducting business within the State of New York.

4.  On March 2, 2020, Defendant/Third-Party Plaintiff Swissport USA, Inc. ("Swissport") filed a Third-Party Complaint against British Airways.

5.  This Court has jurisdiction over this counterclaim pursuant to the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as it relates to the same events alleged in China Southern's Rule 14(a)(3) Claims against British Airways, the events alleged in China Southern's Second Amended Complaint, and the events alleged in Swissport's Third-Party

18

Complaint. This Court also has diversity jurisdiction over the parties pursuant to 28 USC § 1332, as their citizenship is diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.     Venue is proper in this Court pursuant to 28 USC § 1391(b)(2).

### FACTS

7.     At the time of the events alleged in China Southern's Rule 14(a)(3) Claims, China Southern's Second Amended Complaint, and Swissport's Third-Party Complaint, British Airways' cockpit brake operator was performing services pursuant to British Airways' contract with China Southern for Line Maintenance Pooling, Location, Agreed Services, and Charges ("British Airways Agreement"), which was entered into between British Airways and China Southern on July 28, 2016.

8.     The British Airways Agreement between the parties is subject to and expressly incorporates the IATA Standard Ground Handling Agreement of January 2008 ("SGHA 2008"). Accordingly, the British Airways Agreement and the SGHA 2008 form the applicable Contract between British Airways and China Southern.

9.     In the British Airways Agreement, British Airways agreed to provide certain ground handling services at John F. Kennedy International Airport in Queens, New York on China Southern' s behalf.

10.     Among these services were Ramp Services per Section 3.9.3 to Annex A of the SGHA 2008 (Annex A"). The Line Maintenance Agreement and Section 3.9.3(c) of Annex A state that British Airways "at agreed timings" will "Provide authorised cockpit brake operator in connection with towing."

11.     At the time of the events alleged in China Southern's Rule 14(a)(3) Claims, China Southern's Second Amended Complaint, and Swissport's Third-Party Complaint, British Airways was clearly performing its duties under 3.9.3(c) of the British Airways Agreement.

12.     The British Airways Agreement and Contract between the parties, specifically Article 8 of the SGHA 2008, require China Southern to defend and indemnify British Airways for all claims asserted against British Airways related to the events alleged in China Southern's Rule 14(a)(3) Claims, China Southern's Second Amended Complaint and Swissport's Third-Party Complaint, as follows:

ARTICLE 8. LIABILITY AND INDEMNITY

[…]

> 8.1 Except as stated in Sub-Article 8.5, the Carrier shall not make any claim against the Handling Company and shall indemnify it (subject as hereinafter provided) against any legal liability for claims or suits, including costs and expenses incidental thereto, in respect of:
>
> > (a)     delay, injury or death of persons carried or to be carried by the Carrier;
> >
> > (b)     injury or death of any employee of the Carrier;
> >
> > (c)     damage to or delay or loss of baggage, cargo or mail carried or to be carried by the Carrier, and
> >
> > (d)     damage to or loss of property owned or operated by, or on behalf of, the Carrier and any consequential loss or damage;
>
> arising from an act or omission of the Handling Company in the performance of this Agreement unless done with intent to cause damage, death, delay, injury or loss or recklessly and with the knowledge that damage, death, delay, injury or loss would probably result.
>
> PROVIDED THAT all claims or suits arising hereunder shall be dealt with by the Carrier; and
>
> PROVIDED ALSO THAT the Handling Company shall notify the Carrier of any claims or suits without undue delay and shall furnish such assistance as the Carrier may reasonably require.

13.     Sub-Article 8.5 of the SGHA 2008 additionally states:

8.5 Notwithstanding Sub-Article 8.1(d), the Handling Company [British Airways] shall indemnify the Carrier [CSA] against any physical loss of or damage to the Carrier's Aircraft caused by the Handling Company's negligent act or omission PROVIDED ALWAYS THAT the Handling Company's liability shall be limited to any such loss of or damage to the Carrier's Aircraft in an amount not exceeding the level of deductible under the Carrier's Hull All Risk Policy which shall not, in any event, exceed USD 1,500,000 except that loss or damage in respect of any incident below USD 3,000 shall not be indemnified.

For the avoidance of doubt, save as expressly stated, this Sub-Article 8.5 does not affect or prejudice the generality of the provisions of Sub-Article 8.1 including the principle that the Carrier shall not make any claim against the Handling Company and shall indemnify it against any liability in respect of any and all consequential loss or damage howsoever arising.

14.    China Southern's Rule 14(a)(3) Claims, China Southern's Second Amended Complaint and Swissport's Third-Party Complaint allege and seek damages in connection with the following:

(a) China Southern's claim for physical damage to its own aircraft;

(b) China Southern's claim for consequential losses arising from damage to its aircraft;

(c) China Southern's claim for physical damage to Kuwait Airways' aircraft; and

(d) China Southern's claim for consequential losses arising from damage to Kuwait Airways' aircraft.

15.    Given the allegations in China Southern's Rule 14(a)(3) Claims, China Southern's Second Amended Complaint and Swissport's Third-Party Complaint by which they allege and seek damages as set forth above, China Southern's duty to defend British Airways is triggered under the Contract between the parties.

16.    Given the allegations in China Southern's Rule 14(a)(3) Claims, China Southern's Second Amended Complaint and Swissport's Third-Party Complaint by which they allege and seek damages as set forth above, as well as the factual circumstances underlying the incident which

21

is the subject of those pleadings, China Southern has a duty to indemnify British Airways pursuant to the Contract between the parties.

17.     On June 19, 2020, pursuant to the Contract between the parties, British Airways tendered its defense and demanded indemnification from China Southern.

18.     To date, China Southern has not accepted the tender and has not agreed to defend and indemnify British Airways.

**COUNT I – <u>BREACH OF CONTRACT</u>**

19.     British Airways repeats and realleges paragraphs 1 through 18, as if fully set forth herein.

20.     Pursuant to Article 8 of the SGHA 2008, which is expressly adopted in the British Airways Agreement, China Southern agreed to defend and indemnify British Airways from the claims asserted in China Southern's Rule 14(a)(3) Claims, China Southern's Second Amended Complaint and Swissport's Third-Party Complaint.

21.     In breach of its obligations under the British Airways Agreement and the SGHA 2008, China Southern has not agreed to defend and indemnify British Airways.

22.     As a direct and proximate result of China Southern's breach, British Airways has been damaged in an amount to be determined at trial, including but not limited to, all the attorneys' fees, disbursements and costs incurred in the defense of China Southern's Rule 14(a)(3) Claims, China Southern's Second Amended Complaint and Swissport's Third-Party Complaint.

**<u>JURY DEMAND</u>**

Third-Party Defendant/Counter-Plaintiff British Airways PLC demands a trial by jury on all issues triable by a jury.

## **PRAYER FOR RELIEF**

Third-Party Defendant/Counter-Plaintiff British Airways PLC respectfully requests that this Court enter judgment against Plaintiff/Counter-Defendant China Southern Airlines Co. Ltd. as follows:

a.   For any amount that may be adjudged against British Airways in this action;

b.   For all reasonable attorneys' fees, disbursements and costs sustained in defending China Southern's Rule 14(a)(3) Claims, China Southern's Second Amended Complaint and Swissport's Third-Party Complaint;

c.   For any and all further relief that this Court deems just and proper.

Dated: July 10, 2020                                    Respectfully Submitted,

KMA ZUCKERT LLC

*/S/ Nicholas E. Pantelopoulos*

_____
Nicholas E. Pantelopoulos (NP-4969)
1350 Broadway, Suite 2410
New York, New York 10018
Tel: (212) 922-0450
Fax: (212) 922-0530
Email: nep@kmazuckert.com

***Attorneys for Third-Party Defendant
British Airways PLC***